VINCENT J. CASSONE, Plaintiff, v. WM. EDGAR JOHN & ASSOCIATES, INC., Defendant.

Supreme Court, Trial Term, Westchester County, July 23, 1945.

*Cahn & Miller* for plaintiff.

*Bleakley, Platt & Walker* for defendant.

PATTERSON, J. The plaintiff instituted this action to recover for overtime compensation under and pursuant to the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*), the purpose of which is to regulate wages and hours of employment by employees engaged in interstate commerce.

The case was tried by the court without a jury, and during the trial, the parties stipulated with respect to all of the essential facts. There remains practically no issuable fact. The defendant was engaged in the buying, selling, storing, repairing and servicing of boats and yachts, together with engines and accessories, which boats were used exclusively as pleasure craft, the greater part of which selling and servicing was for individual owners residing in the State of New York. Pursuant to the stipulation, plaintiff's Exhibit 7 and defendant's Exhibit H, the total amount of the business of the defendant during both years of the period involved was $94,132.79. The business was divided as follows:

(a) The defendant bought and sold vessels registered, enrolled or licensed pursuant to the laws of the United States as pleasure craft, which vessels theretofore had been used and operated, and were capable of being used and operated, and were intended thereafter to be used and operated for pleasure purposes upon the navigable waters of the United States. This business represented 14.32% of the total business of the defendant, and 96% thereof was for the sale of such vessels, which were delivered by the defendant at its boatyard at Rye, New York, to individuals, who were residents of the State of New York, for their own use.

(b) The defendant stored for hire vessels of the type and character above specified for which it received 7.88% of its total income, and 94.75% thereof was for vessels owned and used by individuals who were residents of the State of New York.

(c) Defendant made repairs including reconstruction of and repairs to hulls, engines, machinery and other equipment, which amounted to 53.95% of its total income, 93.5% of which was for repairs made by defendant to vessels owned and used by individuals who were residents of this State. Said vessels were delivered by each owner thereof at defendant's boatyard, and called for by them upon completion of repairs.

(d) Defendant sold materials and accessories for use on vessels of the character specified for which it received 4.7% of its total income, 95.5% thereof having been sold and delivered to individuals who were residents of the State of New York, for their own use.

(e) As agent for a manufacturer of marine engines and parts located in a State other than New York, defendant sold or caused to be sold, engines and parts, and received commissions for said sales made direct by the manufacturer, which amounted

to 19.65% of the defendant's total business. These engines and parts were shipped by the manufacturer thereof from the State of its location to customers located in the States of New York, New Jersey and Connecticut. Ninety-two and one-half per cent of said amount was sold to individual customers residing in the State of New York upon orders obtained in the State of New York.

On these facts, the defendant contends that it is exempt from the act because it is a retail and service establishment, the greater part of which servicing and selling is in intrastate commerce, and that in any event it was not engaged in commerce as defined by the act, that is in interstate commerce, or the production of goods for commerce.

The plaintiff contends that the defendant was engaged in interstate commerce because its business totally involved the sale, servicing, storing and repair of vessels, which of necessity had to be licensed by the United States before they could operate in navigable waters, and hence they were instrumentalities of interstate commerce.

The answer denies that the defendant was engaged in interstate commerce, and sets up two affirmative defenses.

First, that the plaintiff was employed by the defendant in an executive, administrative or professional capacity, and hence that the minimum wage and maximum hour provisions of the act did not apply to him.

Second, that the defendant was a retail and service establishment within the meaning of the act, and was therefore exempt from the provisions thereof.

Of course if the defendant was not engaged in " commerce ", then this action must fall. " Commerce " as defined by the act means trade, commerce, transportation, transmission, or communication among the several States, or from any State to any place outside thereof (Act, § 3, subd. [b]; U. S. Code, tit. 29, § 203, subd. [b]).

From a reading of the conceded facts one would say, having in mind our ordinary concept of what is interstate commerce, that the defendant was not engaged therein. Our highest courts, having in mind the purpose of the act, have repeatedly and consistently given the most liberal and all-inclusive interpretation and meaning as to what constitutes interstate commerce. In view of these decisions, it is rather difficult to conceive of any business or trade which is not in some degree or respect related to interstate commerce. Indeed, the court said in *Walling* v. *Jacksonville Paper Co.* (317 U. S. 564, 567) : " It is

clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce.''

For instance, it has been held that the act was applicable to the employees of a cigar box factory because the boxes were intended to be used, in part at least, for cigars to be shipped in interstate commerce. Again, the act was held applicable to the employees of an ice plant because the ice was intended to be sold for use by interstate carriers. And again, employees of an independent contractor hired to drill a well to locate oil because the oil, if discovered was intended to be moved in interstate commerce, were themselves engaged in interstate commerce. And again in the oft-cited case of *Kirschbaum Co.* v. *Walling* (316 U. S. 517) it was held that the act covered building and service employees operating an elevator in a building, the owner of which rented it to various tenants, some of whom were engaged in the production of goods for interstate commerce.

It must be borne in mind that the test of coverage is not the business of the employer, but the work of the employee. In other words, the application of the act depends upon the character of the employee's activities.

As the court said in *Kirschbaum Co.* v. *Walling* (*supra*, p. 524): ''But the provisions of the Act expressly make its application dependent upon the character of the employees' activities. And, in any event, to the extent that his employees are 'engaged in commerce or in the production of goods for commerce,' the employer is himself so engaged.''

The plaintiff's work was that of a bookkeeper, to supervise the billing of customers and the collecting of accounts, to purchase materials and supplies to be used by the defendant, etc. It cannot be seriously contended that while the plaintiff was engaged in the office work in connection with the sale of marine engines shipped by the manufacturer from a foreign State to the customers of the defendant located in the States of New Jersey and Connecticut, he was not engaged in interstate commerce, because if the business of which the books were an essential part was ''commerce'', plaintiff was covered by the act, because his work was an essential and necessary part thereof.

The court said, I think it was in *Walling* v. *Jacksonville Paper Co.* (*supra*), that employees who work exclusively in intrastate business are not under the act. Those who work either at selling or delivering across State lines, or at buying and receiv-

ing across State lines, are engaged in commerce whether they write the letters, keep the books or load and unload and drive the trucks. This would seem to fit the plaintiff into the category of being employed in commerce as defined by the act. The fact that only about 20% of the defendant's business was in this class would not seem to deprive the plaintiff of the benefits of the act.

Again as the court said in *Walling* v. *Jacksonville Paper Co.* (*supra,* pp. 571–572): "The fact that all of respondent's business is not shown to have an interstate character is not important. \* \* \* If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce were established by the test we have described, he is covered by the Act."

It would seem logical that if the plaintiff is entitled to the benefits of the act because of these agency sales, he should not be deprived of that benefit because other branches of the defendant's business might have exempted defendant from liability under the act if they constituted the whole of defendant's business.

It is plaintiff's position that the repair business consisting of 54% of the total was clearly both " commerce " and the production of goods for commerce within the meaning of the act; that the repair business was commerce because it involved the repair of vessels which were instrumentalities of interstate commerce, by reason of the fact that being vessels of the United States, they were used in navigable waters of the United States over which under the commerce clause the authority of the Federal Government is supreme and all-inclusive.

It is conceded that the vessels were registered, enrolled or licensed pursuant to the laws of the United States, and therefore they were " vessels of the United States " and were intended for use on the navigable waters of the United States, over which the jurisdiction of the United States to regulate commerce extends, even though such waters be wholly in a single State.

The position of the plaintiff largely revolves around the question of whether the yachts in question were instrumentalities of interstate commerce. They certainly were not engaged in commerce in the ordinary acceptation of that term. They were used solely for pleasure. It is true that in support of defendant's contention that pleasure yachts are not subject to the commerce clause, there are dicta contained in a couple of District Court cases to that effect. However, in answer, the plaintiff advances the argument that the power of regulation flows from

the commerce clause, and if in the cases cited by the defendant, the district judges were of the opinion that pleasure yachts were not subject to regulation under the commerce clause because not engaged in trade, that would have been erroneous.

No sound reason presents itself except jurisdiction, why persons engaged to repair commercial vessels should be protected by the act, while those doing the same kind of work on pleasure craft are not. However, for the purposes of this case, it does not seem necessary to pass upon the question whether yachts, because they are licensed by the Government to navigate the waters of the United States are instrumentalities of interstate commerce, as the plaintiff was clearly engaged in interstate commerce when engaged in the ordering of motors from without the State to be delivered to customers without the State.

Consequently, there remains the question whether the exemptions provided in subdivision (a) of section 13 of the Act (U. S. Code, tit. 29, § 213, subd. [a], clauses [1], [2]), which so far as applicable here, apply. They are as follows: " The provisions * * * shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman * * *; or (2) any employee engaged in any retail, or service establishment the greater part of whose selling or servicing is in intrastate commerce * * *.''

As to the first. Upon the trial it was not seriously urged that the employee was an executive. He concededly was not a salesman, and the purport of the evidence clearly establishes the fact that his duties were clerical, not administrative, and clothed with no discretion in the management and conduct of the business. He had charge of the books of the company. In other words, he was a bookkeeper. He made up the payrolls, supervised the billing of customers and the purchase of materials and supplies, and had the supervision of the stockroom and employees therein. His salary, ranging from $35 to $47.50 a week, would hardly connote an executive. It is my opinion that he was not an executive within the meaning of the act.

This leaves for consideration whether he was engaged in a retail and service establishment, the greater part of whose selling or servicing was in intrastate commerce. To have exemption apply, two things must pertain:

First, the business must be that of a retail or service establishment, and, second, the greater part of said selling or servicing must be in intrastate commerce.

If the business was that of retail or service, then concededly the greater part of the business was in intrastate commerce, unless as pointed out above the yachts were instrumentalities of interstate commerce.

In support of the contention that the business of repairing, servicing, storing and reconstructing yachts is a retail and service establishment, the defendant relies largely upon the authority of *White Motor Co.* v. *Littleton* (124 F. 2d 92). In that case it was admitted that the establishment was a service establishment, and the only issue was as to whether it was a retail establishment. The proof showed that over 70% of the sales were made to the ultimate consumer, and holding that the defendant was a retail establishment exempt from the act, the court said: " The term *retail* is not defined by the Act. Given its common and ordinary acceptation when used in sales parlance, it means a sale in small quantity or direct to the consumer, as distinguished from the word *wholesale,* meaning a sale in large quantity to one who intends to resell." It is to be noted that that case was decided by the Circuit Court of Appeals in 1941 before any of the later decisions of the Supreme Court, commencing with *Kirschbaum Co.* v. *Walling* (316 U. S. 517, *supra*), were announced, in consequence of which, it can hardly be said to be authoritative.

The storage, repairing, reconstructing, buying and selling of yachts is not analogous to our usual conception of a retail business.

As the Supreme Court recently said in the case of *Phillips Co.* v. *Walling* (324 U. S. 490, 498) : " * * * employees of the small local retailers * * * were the sole concern of Congress in § 13(a) (2)."

" To extend an exemption to other than those plainly and unmistakably within its term and spirit is to abuse the interpretative process and to frustrate the announced will of the people." (P. 493.)

I think it is a far cry from the corner grocery to the business of a shipyard engaged in the storage, repair, reconstruction, sale and purchase of yachts. I hold that the business was not a retail business or service establishment within the intendment of the act.

The plaintiff asked to have included in his working hours the time spent by the plaintiff in obtaining instruction in cost accounting. I cannot go along with this, and hence deny so much of the plaintiff's claim. The defendant does not treat of it in its brief, but I do not understand that thereby it is conceding that part of the plaintiff's claim.

Pursuant to the stipulation that if the plaintiff is entitled to anything, he is entitled to recover the stipulated overtime wages of $1,400 plus a like sum by way of liquidated damages, I so find. In addition, it is stipulated that the court may fix the reasonable counsel fee of the plaintiff. He asks for $1,500. This is not challenged by the defendant. If it should eventuate that he ultimately succeeds in recovering for his client the above sum, I think such a fee, in view of the attorney's standing, reputation and earnings, and the work involved, is fair and reasonable, and I consequently fix it in the sum of $1,500.

The penalties provided by the act are drastic. It provides that the employer who violates the provisions of the act is liable for the amount of the unpaid minimum wage or of the unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages, plus reasonable attorney's fees, besides the costs of the action. It was clear to me upon the trial, that the defendant did not intend to violate the act, nor did it know that it was doing so, and likewise the plaintiff was unconscious of any violation of the act by his employer, and was seemingly quite content with his compensation and hours of employment. However, the court has found there has been a violation, and the penalty provided by the statute is mandatory. The act may have been conceived as a humanitarian piece of legislation, but in the instant case, in my opinion, it works an injustice.

Submit findings and judgment on notice.