### BRAND v. McWILLIAMS DREDGING CO. et al.

### Civ. No. 3907.

United States District Court
E. D. New York.

Feb. 4, 1946.

Hyman Korn, of New York City, for plaintiff.

T. Vincent Quinn. U. S. Atty., of Brooklyn, N. Y. (Morris K. Siegel, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendants.

ABRUZZO, District Judge.

The plaintiff in this action seeks to recover alleged overtime compensation, liquidated damages, and counsel fees, under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219.

The plaintiff performed services as a bookkeeper and auditor in the accounting department of defendants' New York office, and his duties consisted substantially of the preparation of invoices for reimbursement, which invoices covered services and supplies procured for dredges in connection with defendants' construction work, the mailing of checks to vendors for payment of invoices, the preparation of papers for reimbursement, posting of items in a control register, the auditing of payrolls, auditing of vendors' voucher checks in connection with materials and equipment forwarded to the base, and auditing of individual checks of terminated field employees, together with individual overtime checks for deposit to the credit of the employees' accounts.

The defendants had an agreement with the United States of America for the construction of a military base located in Greenland.

The plaintiff was employed by the defendants from August 21, 1941, to June 27, 1943. At the beginning, the plaintiff's weekly wage was $50. On September 29, 1941, his weekly wage was increased to $60. On January 5, 1942, his weekly wage was increased to $72. It is admitted that during the course of employment the plaintiff worked more than 40 hours per week. It is conceded that he received payment of straight time for all hours in excess of 40.

The dispute arises over the alleged overtime for the reason that he was employed in excess of 40 hours per week. It has been stipulated by respective counsel for

the parties to this litigation that the amount of unpaid wages for alleged overtime performed by the plaintiff is in the sum of $931.71. The plaintiff's contention for recovery of this amount is that he was an employee within the terms of the Fair Labor Standards Act of 1938 by reason of the fact that he was engaged in the production of goods for interstate commerce and in interstate commerce.

The defendants, on the other hand, assert in their defense that the plaintiff was not engaged in the production of goods for interstate commerce, nor in interstate commerce itself, and that the plaintiff was employed in an executive capacity and, therefore, was exempted from coverage under Section 13(a) of the Fair Labor Standards Act of 1938.

There seems to be no dispute that the defendants were engaged in interstate commerce.

The right of the plaintiff to recover depends upon whether or not the plaintiff in the due course of his employment engaged either in the production of goods for interstate commerce or in interstate commerce itself. Whether or not the plaintiff was an executive employee, exempt from coverage under the Fair Labor Standards Act of 1938, is an academic question until the answer to the preceding question is in the affirmative and in plaintiff's favor.

The defendants, pursuant to their contract with the War Department of the United States, performed work of original construction at this military base in Greenland. As constructon contractors, they handled merchandise after it had come to rest at the site of construction. There seems to be no dispute as to that.

■■ It can be said, therefore, that the defendants were not engaged in the production of goods for commerce. This conclusion is further strengthened, as the proof indicates that all of the construction material was shipped directly to the United States Army, United States Engineer's Office, North Atlantic Division, which governmental agency, in turn, shipped the materials to the army officer in charge of construction at Greenland, so that title to the merchandise was vested solely in the United States Government. The defendants assumed responsibility for disposition only when the merchandise was received at Greenland. It certainly cannot be said, therefore, that the plaintiff's services rendered to the defendants were such that he was engaged in the production of goods for commerce, nor that he would be entitled to no recovery under this particular category. McLeod v. Threlkeld. 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. The test is, that, if the activities of the plaintiff were so closely related to interstate transportation as to be in practice and legal relation a part thereof, they are to be considered in that commerce and applicable to employments "in commerce" under the Fair Labor Standards Act. It is not whether the employee's activities affect or indirectly relate to interstate commerce, but whether they are actually in or so closely related to the movements of commerce as to be a part of it. McLeod v. Threlkeld, supra. As to interstate commerce, every employee engaged in the channels of interstate commerce comes within the Act.

■ The plaintiff's work, that of a bookkeeper, to wit, preparation of invoices for reimbursement which invoices covered services and supplies procured for dredges in connection with defendants' construction work, the mailing of checks to vendors for payment of invoices, the preparation of papers for reimbursement, posting of items in a control register, the auditing of payrolls, auditing of vendors' voucher checks in connection with materials and equipment forwarded to the base, and auditing of individual checks of terminated field employees, together with individual overtime checks for deposit to the credit of the employees' accounts, could undoubtedly fall in the category that the keeping of records was an essential part of interstate commerce. Cassone v. Wm. Edgar John & Associates, Inc., 185 Misc. 573, 57 N.Y.S.2d 169.

The United States Department of Labor, Wage and Hour Division, conducted a survey of employees who were entitled to be paid according to the Fair Labor Standards Act. In a report entitled "Applicability of minimum wage and overtime provisions of Fair Labor Standards Act to em-

ployees in the local offices of architect-engineers and construction companies engaged in the construction of army bases outside the State," it stated as follows:

"From the inspections made, as well as information obtained from the contractors and the Corps of Engineers, it appears that the employees in the continental offices of such companies are engaged in interstate commerce or in the production of goods for interstate commerce, within the meaning of the Fair Labor Standards Act. Such employees are regularly engaged in the preparation of plans, orders, estimates, accounts and other data intended for transmittal from within the State to points outside thereof; in the continuous use of the mails and other instrumentalities of commerce for the purpose of such transmittal; in assembling materials and recruiting personnel for transportation outside the State; and in processes and occupations necessary to the expeditious completion of such transportation. It follows that, in general, all the employees are subject to the Act with the exception of those who may be exempt from the minimum wages and overtime provisions thereof by virtue of section 13 (a) (1) of the Act, which states that those provisions shall not apply to 'any employees employed in a bona fide executive, administrative, or professional * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator).'" (Bulletin No. 11552.)

The Secretary of Labor of the United States, on February 17, 1943, issued an Interpretative Bulletin No. 1, par. VII, of Executive Order No. 9240, 40 U.S.C.A. § 326 note, re-emphasizing the applicability of the Act to contracts in war production. The findings of an administrator, if they are supported by any evidence from which they might reasonably have been inferred, are not to be given the force of statutory authority but they do carry an expression of the view of those experienced in the administration of the Act and acting with the advice of a staff specializing in its interpretation and application. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

Elevator operators employed by an owner who leased his building to tenants, a number of whom manufactured goods which were shipped in interstate commerce, were directly engaged in "commerce" so as to be entitled to benefit of wage and hour provisions of Sections 6 and 7 of the Fair Labor Standards Act, notwithstanding that their acts took place entirely within the state, since they carried out one step in actual transportation of goods to points outside the state. Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567 affirming D.C.E.D. Pa., 38 F.Supp. 204.

Where plaintiff was employed as manager of a branch office of a corporation which was engaged in transmission and communication of messages in interstate commerce, and plaintiff's duties included general office work, sending and receiving telegrams, bookkeeping, making reports, and preparing and reporting payroll data, plaintiff was subject to provisions of the Fair Labor Standards Act and could recover from corporation the amount due under the Act in excesss of the amount paid to plaintiff, plus an equal amount as liquidated damages, and a reasonable attorney's fee. Moss v. Postal Telegraph-Cable Co., D.C.M.D.Ga., 42 F.Supp. 807.

In Roland Electrical Co. v. Walling, Administrator of the Wage and Hour Division, United States Department of Labor, 326 U.S. 657, (pp. 663–665): 66 S.Ct. 413, 416, 90 L.Ed. 383, the Supreme Court in referring to the production of articles for interstate commerce stated as follows:

"It is enough that the employee be employed, for example, in an occupation which is necessary to the production of a part of any other 'articles or subjects of commerce of any character' which are produced for trade, commerce or transportation among the several states. This does *not* require an employee to be employed exclusively in the specified occupation. This does not require that the occupation in which he is employed be *indispensable* to the production under consideration. It is enough that his occupation be *'necessary to the production.'*

\* \* \* \* \* \*

"The work of petitioner's employees has 'such a close and immediate tie with the

process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation "necessary to the production of goods for commerce."' * * *"

It will thus be seen that it is the tendency of the Court to liberally construe the terms of the Fair Labor Standards Act, and decisions must be based upon the theory that Congress by passing the Fair Labor Standards Act intended to regulate wages as much as possible under interstate commerce and production of goods for commerce, rather than regulating interstate commerce or interstate commerce itself.

As to the defense of whether or not the plaintiff was an executive, the Wage and Hour Administrator defined the term "executive" as one who customarily or regularly directs the work of other employees, with authority to hire and fire employees, and with discretionary powers.

The pertinent test, of course, in determining whether one is a bona fide executive is the duties which he performs. Plaintiff testified that it was his duty to examine the bills which were submitted to the Government for reimbursement under the dredge accounts. He was the only one doing that work. He checked all records and bills to determine whether they were correct. Later he had another co-employee but he was not his superior. The chief accountant was both his superior and the superior to his co-employee. It was sought to show that he was in charge of the auditing department which contained eight or nine employees, but the plaintiff testified that he was not in charge of that department at any time, although it appears that he gave orders to some of these co-employees as to what work they were to do. He never saw them before they were hired, and they were sent down to his department from the personnel department. Work was not laid out as it was automatic, but he explained to new employees what work was to be done. It is significant that in plaintiff's department all of the work was placed on a table from which each person was supposed to take his share. If any employee loafed about his work the plaintiff could do noth-

ing about it. All he could do was to "gripe" and go over to the chief accountant and complain that he had to do all the work and the other employees were doing nothing. It is apparent that it was the chief accountant who was head of this department.

The plaintiff was doing routine clerical work and not as an executive, for in that capacity an executive's duties relate to active participation and control, supervision, and management of a business.

I, therefore, direct that a judgment be entered in favor of the plaintiff in the sum of $931.71 as agreed upon between counsel, plus a similar amount of $931.71 as liquidated damages and, in addition thereto, $500 as and for a reasonable amount as counsel fee.