**Glenn E. MERRILL et al., Plaintiffs,**

v.

**EXXON CORPORATION (Successor in Interest to Humble Oil & Refining Company), Defendant.**

**Civ. A. No. 72–H–1169.**

United States District Court,
S. D. Texas,
Houston Division.

Dec. 23, 1974.

Charles C. Orsburn, Bray, Ashley, Shaver, Sherbert, Orsburn & Browning, Houston, Tex., for plaintiffs.

Robert L. Norris, Houston, Tex., for defendant.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

Defendant has moved for summary judgment in Civil Action No. 72–H–1169 and Civil Action No. 72–H–1170, both of which cases present the same legal question: are newly hired employee-trainees entitled to receive overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., for time spent attending required classroom instruction conducted away from the job site after working hours? For the reasons stated herein, this Court answers the question in the negative. Accordingly, defendant's motion for summary judgment is granted in each case.

This question is one of first impression in this Circuit and has been considered by only one other circuit court.[1] This Court has jurisdiction based upon 28 U.S.C. § 1337. The cause of action is based on 29 U.S.C. § 216(b), for alleged violations of 29 U.S.C. §§ 206 and 207.

## STATEMENT OF FACTS

Plaintiffs in No. 72–H–1169 are employees of Exxon Corporation, successor-in-interest to Humble Oil & Refining Company. Plaintiffs in No. 72–H–1170 are employees of Exxon Corporation, successor-in-interest to Enjay Chemical Company. All the members of each class are recent recruitees of defendant. They are hourly employees and are subject to the provisions of the FLSA, including the Portal-to-Portal Act, 29 U. S.C. §§ 251–262, with respect to minimum wages and overtime pay for their regular employment duties.

## THE APPRENTICESHIP PROGRAM

Plaintiffs were trainees in a three-year apprenticeship training program, which included attendance at classes given at Lee College in Baytown, Texas. Attendance was required by defendant. The classroom training was undertaken in conjunction with the apprenticeship program and consisted of approximately 108 hours each year of attendance required in addition to plaintiffs' normal 40-hour work week at defendant's plants, either the oil refinery or the chemical plant, both of which are located in Baytown, Texas.

The apprenticeship program encompasses seven job classifications: boilermaker, electrician, instrument technician, process operator, pipe fitter, rigger and machinist. Within each classification there are eight sub-classifications:

---

1. *Cf.* Blum v. Great Lakes Carbon Corp., 418 F.2d 283 (5th Cir. 1969), cert. denied, 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970). The only reported circuit decision confronting the precise question raised is Ballou v. General Electric Co., 433 F.2d 109 (1st Cir. 1970), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), affirming 310 F.Supp. 476 (D.Mass.1970). The United States Court of Appeals for the First Circuit there affirmed the granting of summary judgment to the defendant-employer. *See* Note, Non-Compensability for Required Classroom Training Under the Fair Labor Standards Act, 6 Suffolk L.Rev. 268 (1972).

apprentice first phase; apprentice second phase; apprentice second phase after six months; apprentice third phase; apprentice third phase after six months; apprentice fourth phase; apprentice fourth phase after six months; and full grade. The total apprenticeship training program lasts 8,320 hours, including 7,744 hours of on-the-job training and 576 hours of classroom instruction. *See* Defendant's Exhibit E, Letter from J. R. Barnes, Employee Relations Manager, Humble Oil & Refining Company, to Mr. Claude Gray, Bureau of Apprenticeship and Training, United States Department of Labor, March 1, 1968.

The related classroom training required is described in Defendant's Exhibit J, "Process Technician Apprenticeship Standards for Baytown Refinery, Humble Oil & Refining Co.", formulated by Baytown Refinery, June 1, 1970. The Apprenticeship Manual indicates that the classroom training is intended to reinforce the apprentice's scientific education with six semesters of technical vocation courses from a practical refinery viewpoint. *See* Defendant's Exhibit J, *supra* at 6. The courses required to be taken at Lee College include: Industrial (Technical) Math 301; Industrial Instruments 302; Industrial Physics 301; Machinery 305; Industrial Chemistry 301; and Unit Operations 301. The first two courses are required in the first year of the apprenticeship, with 54 hours required in each course; the second two courses are required in the second year; and the latter two courses are required in the third year. Defendant's Exhibit J, *supra* at 13.

The classroom training program clause was one facet of the bargaining agreement reached between defendant and the Gulf Coast Industrial Workers Union on April 15, 1969. The agreement provided that each trainee would attend classes on his own time without compensation. *See* Article XXXV, § D.6 and Article XXXVIII, § F.7, Agreement of Defendant and Gulf Coast Industrial Workers Union. At all times pertinent to both of these causes, the Union represented the plaintiffs. Each of the plaintiffs in the class was hired subsequent to January 1, 1969, and is within the coverage of the agreement.

The apprenticeship and training programs promulgated by defendant and agreed upon in the collective bargaining agreement between defendant and the Union were approved by the Bureau of Apprenticeship and Training of the United States Department of Labor on March 4, 1968, *see* Letter from Claude Gray, Jr., Bureau of Apprenticeship and Training, to Defendant (March 4, 1968), and were also approved by the Texas Education Agency on March 15, 1968. *See* Letter from Henry Bobo, Texas Education Agency, to Defendant (March 15, 1968). Defendant pays the tuition for all employees enrolled in the Lee College courses.

Many of the plaintiffs received notification letters regarding the training program. *See* Plaintiffs' Answers to Defendant's Request for Admissions, ##1, 9, 10, 11, 14, 15, 16, 17, 20, 21–30, 34–37, 44, 46, 49–53, 55–57, 59, 60, 62–65, 67–70, 73–75, 77–110, 113–116, 119, 121, 124, 128–139, 141–144, 146–149, 151 and 153–158 (March 4, 1974). Most of the plaintiffs agreed to attend class, outside of regular working hours, without compensation from defendant. *Id.*, ##159–237 (except ##189, 199, 200 and 219). Plaintiffs admit that the collective bargaining language cited by defendant is accurate regarding attendance in the classrooms of Lee College on the employees' own time and that all of defendant's proffered documents pertinent to these causes are genuine. *See* Plaintiffs' Amended Answers to Defendant's Request for Admissions of Fact and Genuineness of Documents at 7–8 ¶ 10 (Novemer 12, 1973).

### DEFENDANT'S CONTENTIONS

Defendant asserts that plaintiffs are clearly covered within the FLSA and the Portal-to-Portal Act. *See* Walling v. Portland Terminal Co., 330 U.S. 148, 150–152, 67 S.Ct. 639, 91 L.Ed. 809 (1947). As plaintiffs have admitted,

they are bound by the bargaining agreement ratified between defendant and the Union and by the agreement provision which prescribes that no compensation shall be received for the classroom training at Lee College engaged in by trainees. The regulations of the Wage and Hour Administrator of the United States Department of Labor permit the exclusion of time spent at classroom training from the compensation of working time. 29 C.F.R. § 785.32.[2]

In consonance with the FLSA, defendant has formed an approved apprenticeship program in the classroom. The program qualifies within the § 785.32 regulation as beyond compensation, because it satisfies three requisites: (1) the bargaining agreement establishing the apprenticeship program contains no language stating that classroom attendance is compensable as hours worked and, indeed, contains a provision to the contrary; (2) the program meets the fundamental standards of the Bureau of Apprenticeship and Training of the United States Department of Labor; and (3) time spent in the program is not spent performing regular productive duties related to the job.

## PLAINTIFFS' CONTENTIONS

Plaintiffs raise several contentions in opposition to demonstrate the compensability of time spent attending required classes: (1) that the Portal-to-Portal Act applies only to "threshold" or preparatory situations in the "twilight" area between the end of the employee's own time and work time at the beginning and/or end of the work day; (2) that the Portal-to-Portal Act does not apply to the vast majority of time in connection with the regular work shift; and (3) that the Portal-to-Portal Act does not address activities specifically and expressly required by the employer to be performed at a specific place and time.

Plaintiffs further contend that § 785.-32 should not be binding in this case because other allegedly related regulations contradict any employer non-liability for compensation permitted in § 785.32. Plaintiffs contend that § 785.27 [3] and § 785.28 [4] should be applicable instead. Because attendance at the classroom training is not voluntary, plaintiffs contend that they should be compensated under the mandate of § 785.28.

Finally, plaintiffs contend that the apprenticeship agreement is different from the collective bargaining agreement so that each plaintiff would have to agree to be bound by the provisions of the apprenticeship agreement for the non-compensation provision to have effect.

2. § 785.32. *Apprenticeship Training.* As an enforcement policy, time spent in an organized program of related, supplemental instruction by employees working under bona fide apprenticeship programs may be excluded from working time if the following criteria are met:

(a) The apprentice is employed under a written apprenticeship agreement or program which substantially meets the fundamental standards of the Bureau of Apprenticeship and Training of the U. S. Department of Labor; and

(b) Such time does not involve productive work or performance of the apprentice's regular duties. If the above criteria are met, the time spent in such related supplemental training shall not be counted as hours worked unless the written agreement specifically provides that it is hours worked. The mere payment or agreement to pay for time spent in related instruction does not constitute an agreement that such time is hours worked.

3. § 785.27. *General.* Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met;

(a) attendance is outside of the employee's regular working hours;

(b) attendance is in fact voluntary;

(c) the course, lecture, or meeting is not directly related to the employee's job; and

(d) the employee does not perform any productive work during such attendance. 29 C.F.R. § 785.27.

4. § 785.28. *Involuntary Attendance.* Attendance is not voluntary, of course, if it is required by the employer. It is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance. 29 C.F.R. § 785.28.

Since there is no evidence that each plaintiff signed such an agreement, it is urged that a fact issue is allegedly raised. *See* Plaintiffs' Reply Brief in Contravention of Defendant's Motion for Summary Judgment (September 3, 1974).

## ABSENCE OF A FACTUAL ISSUE

█ While plaintiffs contend that discovery has not been productive of facts sufficient to allow summary disposition, this Court cannot agree. Sufficient uncontroverted facts have been established by the parties or admitted by plaintiffs to permit determination of the legal question presented. Indeed, the statement of facts contained in defendant's motion for summary judgment is sufficient to permit summary disposition. Plaintiffs have adopted defendant's statement of facts in replying to the motion. *See* Plaintiffs' Reply Brief in Contravention of Defendant's Motion for Summary Judgment at iii, "Statement of Facts" (September 3, 1974). The issue presented in this case is thus a question of law. Ballou v. General Electric Co., 433 F.2d 109, 111 (1st Cir. 1970, cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971).

## IMPACT OF THE REGULATIONS

█ Of course, the promulgated regulations are entitled to great weight, Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), but are not binding upon this Court. *Id.* Similarly, a provision in a collective bargaining agreement reciting that no compensation will be provided to those who attend classroom training does not of itself dictate the answer to the legal question presented in this case, particularly where, as here, the provision is alleged to be in contradiction of a federal statute. Third, the collective bargaining agreement provision attains no more stature because of its affiliation with the regulation, or because it is required under the regulation. Certainly, no federal agency can condone the contracting away of rights if they are provided for by federal statutory language. Therefore, compliance by the defendant with the Wage and Hour regulations, and especially with § 785.32, does not preclude analysis of 29 U.S.C. § 254 by this Court.

█ The Court views a close analysis of the statute to be the most prudent course to follow in answering the legal question presented in this case. The employer must persuade the Court that it is entitled to the statutory exemption. Brennan v. Great American Discount & Credit Co., 477 F.2d 292 (5th Cir. 1973). The statute may require employers to be held liable for overtime compensation to employees who participate in mandatory classroom training. Therefore, the issues are: what is the proper reading of 29 U.S.C. § 254; and does 29 C.F.R. § 785.32 fairly interpret the statute in prescribing non-liability for compensation of classroom training time if there is compliance with the regulations?

## LEGISLATIVE BACKGROUND

Congress enacted the FLSA in 1938 to protect certain groups of the population from sub-standard wages and excessive hours. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), *citing* H.Rep. No. 2738, 75th Cong., 3d Sess. 1, 13, 21, 28 (1938). The FLSA required payment of a minimum wage and contained a provision for overtime pay. 29 U.S.C. §§ 206, 207. Subsequent Supreme Court decisions interpreting the FLSA expanded the act broadly to include as compensable that time spent in walking between a plant gate and the work bench, in performing certain other make-ready activities, and in performing other exertions pursued necessarily for the benefit of the employer. *See* Tennessee Coal, Iron & R. R. Co. v. Muscoda, Local No. 123, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1945).

Creation of these unforeseen liabilities to employers[5] prompted Congress to enact the Portal-to-Portal Act of 1947, 29 U.S.C. § 251 et seq. The Act had several effects, both immediate and long-term. Of significance to this Court is the provision, now codified as 29 U.S.C. § 254, which banned future suits by employees to recover back pay for activities that take place before the start or after the completion of an employee's "principal activities" unless these "preliminary" or "postliminary" activities must be paid for under a contract, custom, or practice in the plant.[6] Additionally, another provision of the Act, 29 U.S.C. § 258, afforded to employers a defense to any liability under the Act for back pay or liquidated damages where the employer can show that he acted in good-faith reliance upon and in conformity with a written administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy.

### SUPREME COURT INTERPRETATION OF 29 U.S.C. § 254

▪ Principles to be utilized in determining the meaning of "preliminary" and "postliminary" have been established by the United States Supreme Court. *See* Steiner v. Mitchell, 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956); Mitchell v. King Packing Co., 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956). Of primary importance is a determination of what is essential for productive work, or, as expressed by the Supreme Court, whether the activity engaged in is an "integral and indispensable part of the principal activity." *See* Steiner v. Mitchell, *supra*, 350 U.S. at 256, 76 S.Ct. 330, 335; Annotation, What Constitutes Activities Preliminary or Postliminary to Employee's Principal Activities Within § 4 of Portal-to-Portal Act, Excluding Such Activities From Coverage of Fair Labor Standards Act, 100 L.Ed. 276 (1956). While fixed, definite standards are inappropriate in view of the infinite variety of working conditions possible, D. A. & S. Oilwell Servicing, Inc. v. Mitchell, 262 F.2d 552, 554 (10th Cir. 1958), use of this general test is appropriate.

▪ Employees may be compensated for activities performed before or after regular hours of work where such activities are an integral part of, and indispensable to, the employees' principal ac-

---

5. So many "portal-pay" suits were filed that an estimated $5 billion was being litigated for overtime compensation. *See* 1947 U.S. Code Cong. Service, pp. 1030–1034.

6. § 254. *Relief from certain future claims under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, and the Bacon-Davis Act.*

(a) Except as provided in subsection (b) of this section, no employer shall be subject to any liability under the [FLSA] of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

. . . . .

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

(b) Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to an activity, the employer shall not be so relieved if such activity is compensable by either—

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

(c) For the purposes of subsection (b) of this section, an activity shall be considered as compensable under such contract provision or such custom or practice only when it is engaged in during the portion of the day with respect to which it is so made compensable.

tivities. Agency regulations acknowledge this.[7]

## IMPACT OF 29 U.S.C. § 254

█ The Court cannot agree with plaintiffs' restrictive reading of the applicability of the Portal-to-Portal Act. The Act was clearly designed to reduce for employers the liability for compensation in preliminary and postliminary working situations. The language of the Act, taken together with the Supreme Court test devised in *Steiner* and *King Packing*—that is, "integral and indispensable part of the principal activities"—dictates that on the spectrum of hours of the day, the Act must be applicable to all hours prior to reporting for, and all hours subsequent to finishing, the regular work shift.[8] The decision on compensability is therefore governed by the Portal-to-Portal Act, 29 U.S.C. § 254.

█ Study in a classroom is not related to present work performance, nor is it the principal activity of the instant job; and the time utilized by plaintiffs in attending and in studying is not an integral or indispensable part of defendant-employer's principal activity.[9]

7. For example, a worker on the day shift who has worked the regular shift and is later called back to the factory for "emergency" work is entitled to appropriate compensation for the extra hours worked *as well as* for the time spent in transit returning to the job site. *See* 29 C.F.R. § 785.36. Time spent in transit is ordinarily not compensable.

8. To the Court, the applicability of the Portal-to-Portal Act extends to all of the time not spent directly working on the job during the regular work shift.

```
, ,                          ' Regular Work Shift '           , ,
, ,                          ,                    ,           , ,
, ,                          ,                  ' ,           , ,
, ,————————————————————————,— — — — — —,————————————————————, ,
, ,     covered by        '       ' covered by              , ,
12M    Portal-to-                    Portal-to-        12M
       Portal Act                    Portal Act
```

Plaintiffs' "twilight" theory would superimpose time demarcations on the Portal-to-Portal Act to limit its reach to a time immediately prior to and immediately following the working day, with the accompanying possibility that a broad area of possible compensation would be available for any time worked more than a few minutes before and a few minutes after the regular working day.

```
' ' Not covered by Act '////'Regular work shift'////'Not covered by Act ' '
, ,                    '///'                '///'                   , ,
, ,                    '///'                '///'                   , ,
, ,————————————————————'///'— — — — — —'///'————————————————————, ,
, ,                    '///'                '///'                   , ,
12M                    Covered              Covered           12M
                       by Act               by Act
```

9. Plaintiffs' suggestion that classroom time is compensable because attendance is required by the employer completely ignores the Supreme Court requirement that the activity be integral and indispensable with the principal activity of employment. Plaintiffs' suggestion would permit as compensable all hours spent at the explicit or implicit command of the employer. The time spent in the classroom is as much for the benefit of the employees as it is for the employer. Indeed, the employer can realize no present benefit from required classroom attendance because the very nature of the apprenticeship program is the preparation of employees for future employment elevation.

Study is not the principal activity of the employer, nor can it be said that the plaintiffs occupy the status of "employee" when attending class; rather, they occupy the status of "student". If classroom time away from the job site were compensable on the theory that it is job-related and attendance is required, possibly no limit could be placed on the amount of employer compensation liability, with the exception of plaintiffs' "twi-

Therefore, compensation is not mandated under the Portal-to-Portal Act for the instant required class attendance. The regulations promulgated in accordance with 29 U.S.C. § 254 are therefore reasonable and properly applicable to defendant's apprenticeship program. The regulations also provide the Department of Labor with the means of regulating and accrediting properly-structured apprenticeship programs—an important goal under the FLSA.

The provisions of § 785.32, being a reasonable interpretation and application of the Portal-to-Portal Act, should therefore control. Plaintiffs' contention regarding the applicability of §§ 785.27 and 785.28 is without merit. In determining compensability, § 785.32 is exclusively applicable to this type of apprenticeship training program, which has been approved by the Bureau of Apprenticeship and Training of the Department of Labor. Since the regulation requires that the collective bargaining agreement contain no provision which provides for compensation of time spent in classroom training away from the job, the provision of the instant agreement which prohibits compensation for class attendance is controlling.

 Plaintiffs' contention that the apprenticeship training program forms a separate agreement from the collective bargaining agreement for purposes of compensation is also without merit. The apprenticeship program has a separate identity for management purposes, since it must first be devised by the employer and submitted for approval to the Department of Labor before it can be included in a collective bargaining agreement. However, for employment purposes, the bargaining agreement is all-encompassing and governs working conditions; the apprenticeship training program discussed in the agreement is but one component of that agreement. Therefore, when the collective bargaining agreement specifically provides that classroom training time does not constitute hours worked, the collective bargaining agreement governs. *See* 29 C. F.R. § 785.32(b). Compensation for mandatory classroom attendance away from the job site may be provided for voluntarily in the collective bargaining agreement. The "no compensation" feature of § 785.32 would then not apply. But the employer cannot be *compelled* to provide for such compensation as a matter of federal law.

Therefore, summary judgment should be, and it hereby is, granted for defendant. The mandatory attendance at Lee College for Exxon Corporation employee-trainees is not compensable as hours worked on the job. 29 U.S.C. § 254. The plaintiffs are not entitled to receive overtime compensation for time thus spent.

light" areas. The employer is already paying tuition. Should the employer be required to compensate the employees for actual time spent in the classroom, it could conceivably follow that it would be required to compensate for time spent in preparation for the class as well. That is, the employer would have to compensate for time spent studying as well as for time spent in traveling to and from class.