[Civ. No. 38283. First Dist., Div. One. Mar. 15, 1977.]

TOM WILSON, Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA et al., Defendants and Respondents.

**COUNSEL**

Cottrell, Hofvendahl & Roessler and Russell V. Roessler for Plaintiff and
Appellant.

William M. Siegel, County Counsel, and Steven Woodside, Deputy
County Counsel, for Defendants and Respondents.

**OPINION**

**SIMS, J.**—Plaintiff, a deputy sheriff and president of the county deputy
sheriffs association, has appealed from a judgment of dismissal entered
following an order sustaining, without leave to amend, the demurrer to
plaintiff's first amended petition for writ of mandate interposed by the
county, its sheriff, the members of its board of supervisors and its county
executive, who were named as defendants. In his petition plaintiff sought
on behalf of himself, and for the members of the association and all
other badge personnel employed by the county, a peremptory writ of
mandate commanding the defendants and each of them to approve his

request and the requests of all similarly situated, employed in the sheriff's office, for all overtime actually spent in off-duty hours meeting the training requirements mandated in section 217 of the Health and Safety Code,[1] and to pay him and the others for such overtime.

From the allegations of the amended petition it appears that the plaintiff and others were directed to undertake such training on their own time under threat of disciplinary action.[2] The plaintiff contends that the statutory provision that the training "shall be provided at no cost to the trainee" requires the county to compensate the trainees for the time spent in training if they are required to undertake it outside of their normal duty hours. Alternatively, he asserts that the trainees, under those circumstances, are entitled to overtime compensation under general

---

[1]Health and Safety Code section 217 as last amended in 1972 (Stats. 1972, ch. 1247, § 1, p. 2434) provides in pertinent part: "All policemen, sheriffs, deputy sheriffs, members of the California Highway Patrol, ocean and public beach lifeguards, and firemen in this state shall be trained to administer first aid, including, but not limited to, cardiopulmonary resuscitation. The training shall meet the standards for first aid training prescribed by the state department and shall be satisfactorily completed by such policemen, sheriffs, deputy sheriffs, members of the California Highway Patrol, ocean and public beach lifeguards, and firemen, as soon as practical, but in no event more than one year after the date of employment. Satisfactory completion of a refresher course approved by the state department in cardiopulmonary resuscitation each year and in other first aid every three years shall also be required. [¶] The state department shall designate a public agency or private nonprofit agency to provide for each county the training required by this section. Such training shall be provided at no cost to the trainee."

The general requirement that deputy sheriffs shall be trained in first aid was originally enacted in 1967 (Stats. 1967, ch. 1531, § 1, p. 3641). Amendments in 1970 and 1971, respectively, deleted a no longer applicable deadline for completion of such training (Stats. 1970, ch. 486, § 2, p. 962), and conformed a change in the name of the state department designated to approve the refresher course (Stats. 1971, ch. 1593, § 65, p. 3241, operative July 1, 1973). The 1972 amendment added lifeguards to the categories to be trained, and the references to cardiopulmonary resuscitation. It also changed the standards from the "standard American Red Cross training in first aid" to "standards approved by the state department [of health]," and added the second paragraph quoted above. The remainder of the section deals with exceptions and definitions not pertinent here.

[2]Attached to the petition is a memorandum dated July 12, 1974, on the subject of "First Aid and Cardiopulmonary Resuscitation Requirements" directed to all badge personnel from the lieutenant in charge of personnel and training. It reads: "Section 217 of the Health and Safety Code requires all peace officer personnel, with the exception of certain administrative officers, to hold a valid First Aid Card and Cardiopulmonary Resuscitation card. [¶] As a professional peace officer you are expected to maintain proficiency in these fields and hold up-to-date cards. Officers failing to do so will be eligible for disciplinary action. [¶] This department will continue to furnish the training. Officers will continue the practice of taking the training on their own time. [¶] We will make every effort to have these courses available at convenient times; however, you may wish to explore obtaining your cards through the local Red Cross or any other agency which may furnish it."

contract principles and specific provisions of a county ordinance. We conclude that although the state statute may be neutral on the issue of whether or not the trainee should be compensated for the time he is undergoing training, general contract principles demonstrate that the plaintiff has stated a cause of action for overtime pay or for compensating time off. The trial court erred in sustaining the general demurrer, and the judgment must be reversed.

The first amended complaint after setting forth the names and capacities of the parties, refers to the directive mentioned above. (See fn. 2, *ante.*) It then alleges that the plaintiff, and others on whose behalf he filed the petition, took the training as required by section 217 of the Health and Safety Code as directed by the sheriff. It is further alleged on information and belief that the State Department of Health designated the county and/or the county sheriff's office as the agency to provide the training required by section 217. Alternatively, it is alleged that the defendants are estopped to deny such designation.[3] Plaintiff states that he and others filed written requests for overtime approval for the training taken, as directed, in off-duty hours, and that such requests were disapproved. There follow allegations of legal conclusions giving rise to the right to a writ of mandate.

The defendants demurred "on the ground that it fails to state facts sufficient to constitute a cause of action." The defendants took their cue from the order of the judge who decided the first demurrer. He not only ruled as has been noted (fn. 3 above), but further stated: "The court does not understand why the County failed to demur on the ground of no cause of action stated, in that the statute doesn't require payment for off-duty time devoted to such training. Had they done so, this matter

---

[3]The allegations were added to the original petition following the sustaining of the defendants' demurrer with leave to amend. That demurrer was interposed "on the grounds that there is a defect of parties and that the petition fails to state facts sufficient to constitute a cause of action." The defendants apparently conceded that the expenditures of time by the employee for training was a "cost to the trainee" for which he should be compensated, but they asserted that the State of California was an indispensable party so it could be determined whether the state or the county was liable for the costs of providing the training. On the second ground it was asserted that there was a failure to allege that the county had been designated as a training agency. The court refused to accept the assumption that there should be compensation for training in off-duty time and overruled the first ground of the demurrer, stating: "Since the statute does not require that the deputies be paid for their off-duty time while in training, there is no question of who shall pay such cost. Therefore, the state is *not* a necessary party to this action." It sustained the demurrer on the second ground and the amended petition was filed.

could have been determined one way or the other at this stage." Accordingly, the defendants urged that ". . . section 217 only requires that the designated agency provide the training at no cost, i.e., without charge, to the trainee and does not mandate that the deputies be paid for their off-duty time." They relied on the opinion and decision of the first judge to support that contention.

In supplemental points and authorities the plaintiff brought to the attention of the court a communication from the county executive to the board of supervisors explaining the impact of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) on county employment, and specifically with relation to training time. The plaintiff urged, ". . . that even without the Fair Labor Standards Act's Amendments of 1974, which are to be liberally interpreted, that mandated training in the public sector should be treated no differently than mandated training in the private sector." In response the defendants pointed out that the federal legislation, since held inapplicable to local government (see below), was not yet in effect with respect to law enforcement personnel, and in any event had standards which were not exceeded by duty time plus training time. They also renewed their general objection to the lack of a requirement of compensation for off-duty time spent in training.

The second judge ruled, "A reasonable construction of the relevant part of Sec. 217 of the Health and Safety Code compels the conclusion that the plain legislative intent is that the actual training only is to be provided by the designee agency without monetary charge or expense to the trainee. Had the legislature intended that the term 'no cost' would include compensatory overtime pay for the time expended in undergoing such training, it would have so provided." The demurrer was sustained without leave to amend, a judgment was entered and this appeal followed.

I

As the judge ruling on the original demurrer pointed out, " . . . [t]he word 'cost' is a word of variable meaning and . . . it must be construed according to the circumstances in which it is used. ■ A review of the authorities is of little value, except to illustrate the fact just stated that, in order to arrive at the intent with which it was used in the particular case, the word is to be construed in the light of all attending circumstances." (*Meyers* v. *The Texas Co.* (1936) 6 Cal.2d 610, 619-620 [59 P.2d

132].) ■ "Construction of a statute is a question of law for the court. [Citations.]" (*County of Monterey* v. *Madolora* (1959) 171 Cal.App.2d 840, 841 [341 P.2d 333].) We are mindful it is apparent from the statute itself, and has been noted, that the Legislature recognized that the public employees referred to in the statute were all in a position where they may frequently come in contact with persons needing first aid, and, since 1972, cardiopulmonary resuscitation, and that it is in the public interest that they be trained to be of assistance to persons in need of such care. (See Op. No. 68-86 (1968) 51 Ops.Cal.Atty.Gen. 125, 126.) ■ As a statute directed at the protection of the public health and safety it should be construed broadly in order to promote that salutary purpose. (*Id*; and see *Askew* v. *Parker* (1957) 151 Cal.App.2d 759, 762 [312 P.2d 342].)

Application of the foregoing principles does not answer the problem here. So long as the training and refresher courses are satisfactorily completed, as required by the statute, the public is equally well served whether the state, the local agency, or the trainee himself bears the burden and expense of the training. From 1967 to 1973 the statute was silent with respect to the source of the training or its cost. All that was required was that the training "shall at least meet the standards of the standard American Red Cross training in first aid." (See fn. 1 *ante*.) It was apparent, or should have been apparent, to any public employee of the designated classifications, and to the local or state agency by which he was employed that such training was compulsory. We can only assume that the time, cost and manner in which such training would be secured was a matter to be negotiated between the public employee and his public employer.

In 1972, effective March 1973, the statute was amended to give the state health department the responsibility to prescribe the standards for training, to approve the refresher courses, and to designate the agency to provide for each county the training required by the section. It was at this time that the section was amended to provide, "Such training shall be provided at no cost to the trainee." ■ We read this statute as restricting the bargaining between employer and employee concerning the burden of qualifying for public employment in the classifications set forth in the statute. It clearly requires that the prescribed training shall be provided at no cost to the trainee at least to the extent that the designated agency incurs expenses in providing that training. We express no opinion as to whether the state, or the public employer, when not itself a designated agency, or the designated agency must bear such

expense. The question here is whether the "cost" referred to in the statute includes the time of the employee.

Webster's Third New International Dictionary (1961) gives the following definitions for "cost": "1a: the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered: charge, price b: whatever must be given, sacrificed, suffered, or forgone to secure a benefit or accomplish a result . . . 2: loss, deprivation, or suffering as the necessary price of something gained or as the unavoidable result or penalty of an action . . . 3: the expenditure or outlay of money, time, or labor . . . ."

Plaintiff would delete the references to "charge" or "price" and stresses "the outlay of . . . time or labor." The defendants for their part insist that the charge or price for the training is all that is encompassed by the statutory prohibition, and that in the absence of express language so providing there should be no compensation for the time spent in training when it is not "on the job," or other incidental expenses incurred by the employee in securing training. Below they relied on the opinion of the judge who sustained the first demurrer (see fn. 2 *ante*). He opined that the trainee would not be entitled to his travel expenses, or the expenses of a baby sitter if ordered to take training outside of duty hours, and reasoned therefrom that the trainee should not be compensated for time so spent. We express no approval of the premise or conclusion as a general proposition. (See part II below.) It does indicate, however, that any interpretation of the statute which transfers it into a mandate to relieve the trainee from other than the "charge" or "price" for the prescribed training (i.e., such as a registration or tuition fee for a prescribed and approved course given by an educational institution or the American Red Cross or other similar organization) will lead to uncertainty and difficulties of interpretation.

We also note that before the amendment of the statute various practices may have developed through bargaining and negotiations between the public employer and the employee required to take the prescribed training. The attempt to determine other than "price" or "charge" as costs on a statewide basis would lead to the dislocation of established practices, without an opportunity for either employer or trainee involved to be heard.

For the foregoing reasons we limit the state statute's reference to the price or charge for the training furnished. We find no mandate in section

217 of the Health and Safety Code to pay overtime pay for training required on off-duty hours. Our problem does not end there. The allegations of the complaint and the matters of county employment policy of which the trial court was requested to take judicial notice require further examination to determine whether the complaint states a cause of action for overtime compensation due the trainees.

## II

Below, the plaintiff also relied upon the provisions of the Fair Labor Standards Act, as interpreted by the county executive, as demonstrating that time spent in training required by the employer should be considered in determining the maximum hours of employment. The county executive had written the board in line with the federal regulations which are reviewed below. The defendants pointed out that although the Fair Labor Standards Act had been amended to include a public agency (29 U.S.C. § 203(d), as amended 88 Stat. 55), it was not effective as to law enforcement personnel until January 1, 1975 (29 U.S.C. § 207(k)), and in any event did not contain a limitation of hours which would affect the time spent in training. Now it appears that the attempted inclusion of public agencies within the scope of employers covered by the act has been declared unconstitutional. (*National League of Cities* v. *Usery* (1976) 426 U.S. 833 [49 L.Ed.2d 245, 96 S.Ct. 2465].) Undaunted, plaintiff nevertheless argues that the principles developed under that act properly express an employee's common law rights in the absence of a contract to the contrary. We agree.

In *Brown* v. *Crown Gold Milling Co.* (1907) 150 Cal. 376 [89 P. 86], the court approved an instruction which told the jury "in effect, that if they believed from the evidence that the plaintiff was employed by defendant for the sole purpose of exploiting a certain specific machine . . . and also find from the evidence that these services were to be rendered at a specified sum per week, which was paid, still if they found that during the term of his employment plaintiff, at the request of defendant, rendered certain services outside the sphere of his employment, he was entitled to recover a reasonable compensation for such services, although there was no express agreement to pay therefor." (150 Cal. at p. 389. See also 32 Cal.Jur.2d, Master and Servant, § 34, pp. 440-441.) Defendants rely on the encyclopedia last cited for the proposition: "Where an employee receives a regular salary, the presumption of law is that extra services rendered by him for his employer during that period, which are

similar or nearly similar to his regular duties, are paid for by his salary." (32 Cal.Jur.2d *op.cit.*) In order to reconcile these conflicting concepts with respect to training, we turn to decisions under the Federal Fair Labor Standards Act for guidance, although not for binding or controlling precedent.

■ It is clear that hours spent by an employee of his own volition in obtaining instruction in his particular field of endeavors cannot be considered hours devoted to his employment. (See *Cassone* v. *Wm. Edgar John & Associates* (1945) 185 Misc. 573, 578 [57 N.Y.S.2d 169, 175-176].) On the other hand, conference time and time spent in attending the employer's school of instruction are properly included in the hours of employment, and under the act compensation must be paid for those hours. (See *Chepard* v. *May* (S.D.N.Y. 1947) 71 F.Supp. 389, 393.) On the other hand, under a work-apprenticeship program, study in a classroom which is not related to present work performance, which is not the principal activity of the job under the program, and which is not an integral or indispensable part of the employer's principal activity is not compensable employment for the purposes of the act. (See *Merrill* v. *Exxon Corporation* (S.D.Tex. 1974) 387 F.Supp. 458, 465.) The governing regulations which can be found in the case last cited (387 F.Supp. at p. 462, fns. 2, 3 and 4), and which appear to have been the basis of the county executive's letter referred to above, are as follows: Section 785.32 deals with apprenticeship training, and although it governed the *Merrill* case, it is not applicable here. Section 785.27, "*General.* Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met; [¶] (a) attendance is outside of the employee's regular working hours; [¶] (b) attendance is in fact voluntary; [¶] (c) the course, lecture, or meeting is not directly related to the employee's job; and [¶] (d) the employee does not perform any productive work during such attendance." (29 C.F.R. § 785.27.) Section 785.28, "*Involuntary Attendance.* Attendance is not voluntary, of course, if it is required by the employer. It is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance." (29 C.F.R. § 785.28.)

■ We believe that those principles should control the trainee's right to compensation in the absence of any provision in the contract of employment to the contrary. From the allegations of the complaint it appears that attendance at the training sessions in question was outside

of the employees' regular working hours; that the attendance was involuntary in that it was required by the employer, and the employees were told that disciplinary action could be taken if the training was not taken; and the training was directly related to the employees' jobs. The complaint, therefore, stated a cause of action for overtime compensation, and the trial court erred in sustaining the general demurrer.

We in no way preclude the public employer from showing that the requirement of compliance with section 217 of the Health and Safety Code in the manner directed by the sheriff was a term of the employment of plaintiff and others similarly situated, nor do we preclude such arrangements in the future. Since the complaint does not show such an agreement, it states a cause of action. Nor do we determine on the record now before us, whether the trainees, if entitled to overtime compensation, should receive, under applicable county ordinances, overtime pay or compensating time off.

The judgment is reversed and the case is remanded to the trial court with directions to overrule the defendants' demurrer and allow the defendants a reasonable time within which to file an amended return on the merits.

Molinari, P. J., and Elkington, J., concurred.