[No. B007332. Second Dist., Div. Five. July 31, 1986.]

MELISSA FLOOD, a Minor, etc., Plaintiff and Appellant, v.
WYETH LABORATORIES, INC., Defendant and Respondent.

**COUNSEL**

Good & Novack, Lebovits & David, Moses Lebovits and Ned Good for Plaintiff and Appellant.

Ward, Dodd, Gaunt & Denver, Denver & Dodd, Andrew W. Dodd, Strom, Schrag, Baum & Buller, Thomas F. Schrag, McDowell & Colantoni, Alan McDowell, De Goff & Sherman and Victoria J. De Goff as Amici Curiae on behalf of Plaintiff and Appellant.

Morgan, Wenzel & McNicholas, Lee B. Wenzel, Timothy T. Bradford, Greines, Martin, Stein & Richland and Alan G. Martin for Defendant and Respondent.

**OPINION**

**ASHBY, J.**—Minor appellant Melissa Flood[1] appeals from a dismissal following a judgment upon the pleadings in favor of respondent Wyeth Laboratories, Inc. (Wyeth). Appellant received a combined diphtheria, pertussis (whooping cough) and tetanus (DPT) immunization, which allegedly caused her severe brain damage. Wyeth was the manufacturer of the vaccine. She sued Wyeth for negligence and strict products liability. The trial court

---

[1]Appellant's father, Thomas Flood, is her guardian ad litem.

found Wyeth immune from liability pursuant to Health & Safety Code section 429.36. While cognizant of the liability problem caused by vaccines which cannot be made safe and the growing insurance costs borne by the vaccine manufacturers, we find that neither the section interpreted by the trial court nor the statutory scheme that requires immunization for school-age children (Health & Saf. Code, §§ 3380-3390) extends a grant of immunity to the manufacturer of the vaccine, and reverse the trial court's judgment.

I

Wyeth presents us with a compelling argument: Every child in this state must receive the DPT vaccine before being admitted into a school of any kind. (Health & Saf. Code, §§ 3380-3390.)[2] The DPT vaccine is not completely safe. If manufacturers are not granted immunity and are forced to defend against inevitable lawsuits, they will cease manufacturing and the vaccine will become unavailable. The legislative purpose in requiring the vaccine—total elimination of diphtheria, pertussis, and tetanus—will be thwarted. Therefore, Wyeth contends, by the act of requiring DPT vaccination the Legislature must have granted immunity to DPT vaccine manufacturers to prevent the law from becoming impossible to implement.

The Legislature of this state, and lawmakers in general, are faced with a serious dilemma where the population is threatened by infectious deadly disease and the immunization against the disease also presents some risks. The Legislature must decide whether the risks inherent in the disease outweigh the risks present in the vaccine. When that question is resolved in favor of the vaccine, the result is mass inoculation. How does the Legislature assure a vaccine supply? Wyeth suggests this is accomplished only through immunizing the manufacturers from liability. There is the possibility, however, that the Legislature intended that the market place would assure a DPT vaccine supply. Since every child in California must receive the vaccine, the demand is large and ongoing. There appear to be no price controls. If a manufacturer finds costs rising due to lawsuits or insurance premium hikes, the manufacturer is free to raise the price of the vaccine.

The legislative history of section 3380 et seq., unfortunately, makes no mention of the Legislature's thinking with respect to vaccine supply. The absence of any discussion, however, supports our analysis. There is nothing

---

[2]No person shall be unconditionally admitted "as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, or development center, unless prior to his or her first admission to that institution he or she has been fully immunized against diphtheria, pertussis (whooping cough), [and] tetanus . . . ." (Health & Saf. Code, § 3381.) Some exceptions, not pertinent to this discussion, are permitted. (See Health & Saf. Code, §§ 3385 and 3386.)

in the statutes requiring immunization against communicable childhood diseases which can be read to require immunity for manufacturers to assure an adequate vaccine supply, and there is nothing in their statutory history that can be so read.

We have been referred by Wyeth to the National Swine Flu Immunization Program (former 42 U.S.C. § 247b, as found in Historical Note following current section). The swine flu legislation specifically provided immunity for the manufacturers, which will be discussed in more detail in section II of this opinion. What is of import to us here is that the immunity was granted before the swine flu vaccine was developed. The immunity was an incentive given by Congress to the manufacturers to prevent what was seen as an impending national emergency.[3] (*Wolfe* v. *Merrill Nat. Laboratories, Inc.* (D.C.Tenn. 1977) 433 F.Supp. 231, 234. See *Kearl* v. *Lederle Laboratories* (1985) 172 Cal.App.3d 812, 824 [218 Cal.Rptr. 453].) As Wyeth states in its brief, the DPT vaccine was available well before the enactment of the Health and Safety Code sections which require immunization for the school-age children of this state. This distinction is another reason why we decline to follow Wyeth's contention that the policy of mandatory immunization necessarily includes an immunity from liability for the manufacturers of the vaccine.

Wyeth is in error in arguing that a finding of its liability by a court or a jury is a finding that the Legislature should not have made the vaccination mandatory or have allowed the Wyeth vaccine to be used in the mandatory program. A suit against Wyeth for negligence or even strict liability is not an attack on the police power of the legislative branch. Analogous suits have been brought in this state. Section 3380 et seq. also requires immunization against poliomyelitis. Manufacturers of the poliomyelitis vaccine have been sued. (See *Kearl* v. *Lederle Laboratories, supra,* 172 Cal.App.3d 812; *Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424 [79 Cal.Rptr. 369].) *Kearl* in particular counters the contention that the legislation requiring vaccination against childhood diseases precludes the finding of any liability by a vaccine manufacturer. The court in *Kearl* held that manufacturers of vaccines are subject to liability under a strict products liability design defect theory, unless the trial court makes certain evidentiary findings[4] (172 Cal.App.3d at pp. 829-831); under a theory of strict products

---

[3]Along the same line is the bill currently pending in the California Legislature to encourage the development of an AIDS (acquired immune deficiency syndrome) vaccine. The Legislature is considering granting some immunity to the manufacturers who develop the vaccine. (See *Panel Approves AIDS Vaccine Bill,* Los Angeles Daily Journal (July 2, 1986) p. 2, col. 5.)

[4]The trial court must find, "after taking evidence, that the product complained of is 'unavoidably dangerous'; in such special cases, a plaintiff may proceed on a design defect theory only on the basis of negligence." (*Kearl* v. *Lederle Laboratories, supra,* 172 Cal.App.3d at p. 817.)

liability for manufacturing defects (*id.*, at p. 831); and for negligent warning defects (*id.*, at pp. 833-834).

The statutes requiring vaccination do not compel a finding that the manufacturers are immune from suit. Wyeth is not alone in predicting that a DPT vaccine shortage will be caused by the suits brought against the manufacturers, because production will become unprofitable. (See Horn, *Vaccine Crisis Spurs Bills in Congress* (Summer 1985) 10 Litigation News 5.) If this should occur, we would expect the Legislature to intervene to prevent the resulting health crisis. This is a legislative function. ■ We are bound by the principles of legislative interpretation, the most fundamental rule of which is that "the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Thus, we cannot read a solution into Health and Safety Code sections 3380-3390, no matter how desirable or how necessary that solution is or may become.

## II

The specific statute interpreted by the trial court in its grant of immunity to Wyeth is Health and Safety Code section 429.36. That section states: "No person shall be liable for any injury caused by an act or omission in the administration of a vaccine or other immunizing agent to a minor, including the residual effects of the vaccine or immunizing agent, if such immunization is required by state law and the act or omission does not constitute willful misconduct or gross negligence." The trial court found that the word "administration" as used in this statute includes manufacturing activities.

■ Questions relating to the interpretation of statutes, including their applicability to a given situation, are matters of law for the court. (*Wilson* v. *County of Santa Clara* (1977) 68 Cal.App.3d 78, 84 [137 Cal.Rptr. 78].) The first step in the process of statutory construction is the examination of the language of the statute for ambiguity. (*Smith* v. *Rhea* (1977) 72 Cal.App.3d 361, 365 [140 Cal.Rptr. 116].) The courts must give statutory language its usual, ordinary meaning. (*California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d 692, 698; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].) "'[I]f statutory language is "clear and unambiguous there is no need for construction, and courts should not indulge in it." . . .'" (*Hyland Therapeutics* v. *Superior Court* (1985) 175 Cal.App.3d 509, 515-

516 [220 Cal.Rptr. 590], quoting *Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].)

 The term administration has several meanings. When used with respect to medicine, it clearly has a meaning close to the one suggested by appellant—the meting out, or the application or dosage. (Webster's New World Dict. (3d ed. 1981) p. 27.) None of the dictionary meanings can be said to include manufacturing. Thus, the plain meaning of the statute does not include manufacturers within its grant of immunity.

Our conclusion is supported by the legislative history. Section 429.36 and its companion section 429.35[5] were introduced as Senate Bill No. 967. Looking to the language of the bill and its amendments before enactment, we find that at first it had no liability exemption clause. The first amendment to the bill added an exemption for "physicians and surgeons from liability for damages caused by negligent acts or omissions in the administration of immunizing agents . . . ." This language was amended to provide that "[n]either a physician and surgeon nor any local health department shall be liable for any injury caused by an act or omission in the administration of a vaccine or other immunizing agent to a minor . . . ." Finally, the bill was given the language it now contains, i.e., "[n]o person shall be liable for any injury . . . in the administration of a vaccine . . . ."

The Legislative Counsel's Digest discussion of Senate Bill No. 967 indicates that the purpose of the bill was two-fold: to provide medical or institution care or indemnification for children who suffer adverse reactions to required immunization, and to exempt physicians and surgeons from liability for damages caused by negligent acts or omissions in the administration of immunizing agents.[6]

 Our reading of the statute is further supported by committee reports, upon which we may rely. (*Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136, fn. 11 [203 Cal.Rptr. 886].) The staff of the Senate Committee on Health and Welfare analyzed the bill as amended in May 1977. The liability exemption aspect of the bill was said to include physicians, surgeons and local health departments "administering an immunization program." The Assembly Committee on Health

---

[5]Section 429.35, entitled "Care for reactions by minors; Claims, reimbursement, and subrogation; Immunization Adverse Reaction Fund," provides a system by which medical expenses caused by a severe adverse reaction to any immunization required by state law for a child under 18 shall be reimbursed by the state up to $25,000.

[6]The bill specifically excluded "prescribed participation in the National Influenza Program of 1976."

analyzed the bill as amended in June 1977 and found it to exempt from liability "any person administering an immunization . . . if the immunization is required by state law and does not constitute willful misconduct."[7]

The history of this statute does not suggest that it was intended to exempt manufacturers of vaccines from liability. The focus of the exemption was, from the beginning, on those who administer, i.e., apply the vaccine to the minor. The immunity was extended to include those who administer, i.e., dispense the vaccine to the community, such as local health departments. But nothing supports the reading given by the trial court, i.e., that administration includes manufacturing.

Wyeth contends that in creating the immunity statute, section 429.36, the Legislature followed the model of the former National Swine Flu Act, 42 United States Code section 247b(k). We find no support for this argument in the legislative history. Furthermore, by its language the federal statute is distinguishable. The National Swine Flu Act clearly afforded immunity to "the agencies, organizations, and individuals who . . . *manufacture, distribute, and administer* the swine flu vaccine." (Italics added. 42 U.S.C. § 247b(k), as found in the Historical Note following the current section.) Not only did the federal act immunize the manufacturers in plain language, it distinguished those who manufacture vaccines from those who administer vaccines. Therefore, if Wyeth were correct in its position that the Legislature used the Swine Flu Act as its model, we would have to conclude that the Legislature intended that DPT vaccine manufacturers would be held liable.

Wyeth quotes the author of Senate Bill No. 967, Senator Jerry Smith, who said in a press release, "[N]o person shall be liable for an injury caused in connection with an immunization required by state law, unless the injury was caused by willful misconduct." This language is not persuasive on the issue of whether a vaccine manufacturer is included within the immunity grant of the statute. In any case, "we do not consider the motives or understandings of individual legislators . . . . Nor do we carve an exception to this principle simply because the legislator whose motives are preferred [*sic*] actually authored the bill in controversy [Citation]; no guarantee can issue that those who supported his proposal shared his view of its compass." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371]; *California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d 692, 699-700.)

---

[7]The Department of Finance reached the same conclusion. The bill, in its words, exempted "any person who administers vaccines if the act does not constitute willful misconduct or gross negligence."

■ Wyeth maintains that it must be included within the grant of immunity of section 429.36 because the section makes no exceptions. Any person involved in the administration of the vaccination is immune from liability. But appellants do not contend, and we do not find, that the manufacturers are excluded. The manufacturers are simply not included within the term "administration."

Wyeth's final argument with respect to the interpretation of section 429.36 is that it is illogical, unfair and probably unconstitutional for the Legislature to confer immunity on the vaccine's users but not on its makers. Wyeth contends that it is unfair to hold the manufacturer liable for the negligence of the doctor or the medical assistant. Nothing in the statute and nothing in this opinion suggests that a manufacturer will be held liable for the negligence of another.

Wyeth contends that the Legislature has the power to grant immunity to vaccine manufacturers and raises persuasive policy arguments which explain why it would be desirable for the Legislature to do so. The question presented by this appeal is not whether a grant of immunity to the manufacturers of DPT is desirable or constitutional but whether or not the Legislature intended manufacturers to have immunity. We find no such legislative intent in the relevant statutes.

The judgment is reversed. Costs on appeal awarded to appellant.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied September 8, 1986, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 25, 1986.