TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 86-707 |
| | : | |
| of | : | JANUARY 8, 1987 |
| | : | |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE RICHARD J. MOORE, COUNTY COUNSEL, ALAMEDA COUNTY, has requested an opinion on the following question:

May the increased benefits for retirees provided for in section 31681.52 of the Government Code, a provision of the County Employees Retirement Law of 1937, be funded from the Supplemental Retiree Benefits Reserve established pursuant to section 31618 of the Government Code?

CONCLUSION

The increased benefits for retirees provided for in section 31681.52 of the Government Code may be funded from the Supplemental Retiree Benefits Reserve established pursuant to section 31618 of the Government Code.

1

ANALYSIS

Alameda County is one of 20 counties which have adopted the County Employees Retirement Law of 1937, Government Code section 31450 et seq.[1] Under that law these 20 counties operate and fund independent retirement systems for employees in each county.

In this request for our opinion we are asked whether a particular supplemental benefit for individuals who retired on or prior to June 30, 1971, and which may be provided to them at the option of the board of supervisors pursuant to section 31681.52, may be funded from the Supplemental Retiree Benefits Reserve, a fund established pursuant to section 31618. Section 31618.52 provides a permanent increase in retirement benefits of between 2% and 10% in increments of 2% to retirees, dependent upon the year in which they retired. For retirees who retired on or prior to June 30, 1967, the increased benefit is 10%. For those who retired during the 12 months ending June 30, 1971 the increase benefit is only 2%.

In resolving this question we will examine the manner in which retirement benefits under the 1937 Act, both regular and supplemental, are financed both in counties which have adopted and which have not adopted the "alternative financial provisions" of sections 31610 through 31619 of the Government Code, which were added in 1983 as article 5.5 of the 1937 Act. Counties which have not adopted these provisions still operate under article 5. The Supplemented Retiree Benefits Reserve is a fund provided for under these new alternative financial provisions of article 5.5.

The County Employees Retirement Law of 1937 provides retirement benefits for county employees (and participating special districts) which are funded by employee contributions, employer contributions, and earnings on monies contained in the retirement fund. (See generally, §§ 31453, 31580, 31581-31584, 31591-31592.3, 31610-31619, 31620 et seq.) Regular retirement benefits are funded one-half by the employees' contributions and one-half by employers' contributions. In the aggregate they reflect the employees' annuity (see § 31457) and an equal employer-provided pension (see § 31471). (See also generally section 31673 et seq.). The regular retirement annuity may be the "actuarial equivalent" of the employees' contributions, or it alternatively may be a "fixed-formula" retirement annuity, based upon a certain percentage of the employees final compensation. Alameda County operates under a "fixed- formula" retirement system.

In addition to the regular retirement allowance, the 1937 Act provides for numerous supplemental benefits which are usually provided only if the board of

---

[1]   Al section references are to the Government Code unless otherwise indicated.

86-707

supervisors so resolves. These supplemental benefits include those such as placed in issue herein, which provide for a permanent addition to previously retired members' retirement allowance.[2] They also include permanent cost-of-living adjustments (art. 16.5, § 31870 et seq.); retrospective cost-of-living adjustments (art. 16.6, § 31875 et seq.); non-permanent supplemental cost-of-living adjustments (§ 31681.8); group life and medical insurance benefits, (§§ 31691-31692); and a small death benefit for retirees' beneficiaries (§§ 31789.1, 31789.2, 31789.12, 31789.13.)

As noted, in 1983 the Legislature adopted "alternative financial provisions" for counties which have adopted the 1937 Act (Stats. 1983, ch. 886) which are themselves operative only if adopted by both the county board of retirement and the county board of supervisors. (§ 31610.) Thus, the Supplemental Retiree Benefits Reserve account is established only in counties which have adopted these new provisions. In order to understand the issue presented in this request, that is, the possible use of these reserves to fund the supplemental benefits provided for in section 31681.52, the financial provisions which these alternative provisions supplant or modify require discussion. The discussion will center upon the allocation of so-called "excess interest" earned on retirement fund investments, since that "excess interest" is used to fund the new Supplement Retiree Benefits Reserve.

A.     ARTICLE 5 COUNTIES

Counties which have not adopted the alternative financial provisions of article 5.5 are governed by the financial provisions found in article 5 of the 1937 Act. Under the latter provisions, an article 5 county is directed to obtain at least every three years an actuarial evaluation of its retirement system. "Upon the basis of the investigation, valuation, and recommendation of the actuary, the board [of retirement] shall . . . recommend to the board of supervisors such changes in the rates of interest, in the rates of contributions of members, and in county and district appropriations as are necessary" to fund the system. "With respect to the rates of interest to be credited to members and to the county or district, *the board may, in its sound discretion, recommend a rate which is higher or lower than the interest assumption rate established by the actuarial survey*." (§ 31453, as incorporated by reference in § 31581, emphasis added.)

Employer and employee contributions to a retirement system such as the 1937 Act system are necessarily dependent upon and a function of accrued liabilities and

---

    [2]   Interestingly, section 31681.52, at issue herein, is only one of nine provisions for permanently increasing the retirement allowance of prior retirees by a fixed percentage or a fixed amount. (See §§ 31681.1-31681.54.) Additionally, section 31681.7 provides for a temporary increase in allowances.

assumed income.  Accordingly, if the board decides to credit the employer and employee contribution accounts with less than the actuarially assumed interest rate (the assumed projected earnings of the system's investments), contributions will have to be increased; and vice versa.  If the governing board fails to credit contributions with the full interest, then such interest (after certain allocations to reserves) will be available for the payment of benefits from the "advance reserves."

Sections 31592 and 31592.2 are the key provisions in this respect in article 5 counties.[3]  Section 31592 provides that interest not credited to contributions (and reserves) shall remain in the retirement fund as a reserve for contingencies, except as provided in sections 31529.5 and 31592.2.  Section 31592.2 then permits the establishment of a county "advance reserves" from excess interest "for the sole purpose of payment of the cost of the benefits described in" the 1937 Act.

---

[3]     Section 31592 provides:

"Earnings of the retirement fund during any year in excess of the total interest credited to contributions and reserves during such year shall remain in the fund as a reserve against deficiencies in interest earnings in other years, losses on investments and other contingencies, except as provided in Sections 31529.5 and 31592.2."

Section 31592.2 provides:

"In any county, earnings of the retirement fund during any year in excess of the total interest credited to contributions and reserves during such year shall remain in the fund as a reserve against deficiencies in interest earnings in other years, losses on investments, and other contingencies, except that, when such surplus exceeds 1 percent of the total assets of the retirement system, the board may transfer all, or any part, of such surplus in excess of 1 percent of the said total assets into county advance reserves for the sole purpose of payment of the benefits described in this chapter.

"Where the board of supervisors has provided for the payment of all, or a portion, of the premiums, dues, or other charges for health benefits, Medicare, or the payment of accrued sick leave at retirement to or for all, or a portion, of officers, employees, and retired employees and their dependents, from the county general fund or other sources, the board of retirement may authorize the payment of all, or a portion, of payments of the benefits described in this paragraph from the county advance reserves."  Section 31529.5 merely provides for payment of certain attorneys fees.

4

Accordingly, it is seen that under the foregoing provisions of the 1937 Act an article 5 county could "divert" all or virtually all interest income from the retirement system accounts which generated that income, and then, after applying the requisite amount of income to insure the minimum 1% of assets for the reserve for contingencies, allocate *all* the remaining income to the advance reserves for the payment of benefits.

In addition to those benefits set forth in paragraph two of section 31592.5, *supra*, at note 3, the 1937 Act in other provisions specifically permits or requires certain benefits to be financed from the advance reserves in an article 5 county (or from the new Supplemented Retiree Benefits Reserve in an article 5.5 county, to be discussed *infra*). These include some, *but not all*, of the supplemental benefits already alluded to above. With respect to the supplemental benefits which specifically mention the advance reserves as a source of funding, some benefits are vested and will require continued funding, whereas others are nonvested and may be withdrawn at any time by the board of supervisors.

Thus, group insurance benefits for present or future retirees (or a like increase in benefits) may be provided and funded either from employer contributions or from the advance reserves in article 5 counties. (See §§ 31691, 31691.1.) These benefits are nonvested. (§ 31692.) Likewise, a small death benefit for the benefit of retirees' beneficiaries may be financed either from county contributions or from the advance reserve, or a combination of both in article 5 counties. (See §§ 31789.1, 31789.2, 31789.12, 31789.13.)[4] These particular death benefits provisions are to be adopted in article 5 counties only if it is determined in advance that they may be paid from the advance reserves. The code provisions are silent as to which these are to be considered as vested or nonvested.

Of particular significance to our inquiry herein will be cost-of-living adjustments. This is so since the section 31681.52 benefits, though not so denominated, appear also to be in the nature of such benefits. Cost-of-living benefits are provided for generally in article 16.5 of the 1937 Act. Article 16.6 of the Act thereafter additionally provides for the adoption of retrospective cost-of-living adjustments. And finally, section 31681.1 (contained in article 8, which article provides generally for retirement allowances) provides for special nonvested supplemental cost-of-living allowances.

Accordingly, pursuant to article 16.5, cost-of-living adjustments to a maximum of 2, 3, 4 or 5 percent (depending upon the code section applicable to the

---

[4]   Other sections may provide other death benefits at the option of the county which may specifically be required to be financed from county or district contributions. (E.g., §§ 31787.6, 31789.) Other sections may be silent as to the funding source. (E.g., § 31787.5.)

5

county) may be granted based upon the consumer price index. *These allowances are vested.* With respect to financing, section 31873 provides that they shall be funded equally between the employer or the contributing employees or by the employer alone. However, section 31874 thereafter provides in part that:

> "No provision of this chapter shall prevent or be construed to prevent the use and expenditure of surplus described in section 31592.2 [the advance reserves] to fund any part or all of any increases in allowance otherwise permitted after this article or Article 16.6 (commencing with section 31875) or both this Article and Article 16.6 or any of the provisions of this article or Article 16.6 have been made applicable."

Thus, article 5 counties may fund *vested* cost-of-living adjustments and *vested* retrospective cost-of-living adjustments provided in article 16.6 from the advance reserves.

Finally, with respect to cost-of-living allowances, article 16.5 provides in section 31874.3 for supplemental cost-of-living increases similar to those provided for in section 31681.8, which also are not vested. This allowance *must* be paid in article 5 counties from the advance reserves. With respect to the section 31681.8 supplemental allowance, the code provides that benefits may be provided only after advice of an actuary that it may be fully funded on a sound actuarial basis, *including the use of funds provided in section 31592.2*, or an increase in the employers contributions, or a combination of both.

The foregoing discussion of supplemental benefits leaves us only with a discussion of the supplemental benefits such as are provided for in section 31681.52 of the 1937 Act. These benefits provide to prior retirees a permanent increase in their retirement allowance analogous to a retrospective cost-of-living adjustment. As already discussed above, section 31681.52 provides for an increased retirement allowance of between 2% to 10% for persons who retired on or prior to June 30, 1971. As to these and similar benefits provided for in the 1937 Act, with the exception of section 31681.7 benefits (see § 1592.3), *the act is silent as to a funding source*. However, if adopted by the board of supervisors, the funding, of course, must come from somewhere.

## B.    ARTICLE 5.5 COUNTIES

With this background, we now proceed to article 5.5 of the 1937 Act, added in 1983 as sections 31510-31510.9 and renumbered in 1984 as sections 31610-31619. (See Stats. 1983, ch. 886; Stats. 1984, ch. 193.)

The legislative purpose of the addition of article 5.5 is set forth in section 1 of chapter 886 as follows:

"SECTION 1.  It is the intent of the Legislature in enacting this act to provide alternative provisions to preserve the actuarial integrity of the county retirement systems created under the County Employees Retirement Law of 1937, to recognize the fiduciary role of the boards of each affected county retirement system, and to assist in the orderly and equitable disposition of the various county retirement system reserves against deficiencies.

"In enacting this act, the Legislature provides for the augmented crediting of interest earnings to various employee, employer and retired member accounts in the retirement fund in an effort to assure that the accounts are in actuarially sound condition in relation to their current liabilities and existing statutory requirements regarding the funding of present unfunded actuarial obligations.

"It is also the intent of the Legislature to not disrupt the supplemental benefits currently being provided to county retirees with funds from various retirement system reserves.  In providing a limit on contingency reserve accounts created by the added Section 31510.6 of the Government Code, it is the intent of the Legislature that any funds currently in reserve against deficiencies accounts which exceed the maximum prescribed by this act, on the effective date of this act, be transferred to the Supplemental Retiree Benefits Reserve created by the amended Section 31510.8 of the Government Code, to be disbursed at the discretion of the affected county board of retirement for the purpose of providing benefits to present and future retirees and beneficiaries."

The basic change effected by chapter 5.5 was to require that income at the full actuarial rate be credited to accounts to pay existing liabilities rather than to reserve accounts which could be used to fund additional benefits.  It is only that part of the income which exceeds the full actuarial rate which may be placed in reserve accounts under chapter 5.5.

A brief outline of some of the more salient provisions of article 5.5 is as follows:

1.  Section 31453 setting forth the duties of the county to obtain an actuarial evaluation was rendered inoperative in article 5.5 counties.  Likewise, the sections

7

providing for crediting of interest to various fund accounts, the establishment of a reserve for contingencies, and the establishment of county advance reserves were rendered inoperative in such counties.  (§ 31510; now § 31610.)

2.  A section similar to section 31453 requiring an actuarial evaluation at least every three years was added for article 5.5 counties.  The main difference is the addition of a proviso that the retirement board "[i]n making recommendations to the board of supervisors [as to changes in the rates of interest, member contribution rates, and requisite county and district appropriations] . . . shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  (§ 31510.1, now § 31611.)  In short, a "prudent man" rule is set forth in article 5.5 for the board of retirement.

3.  Interest at the *actuarial rate* (defined in § 31510.2; now § 31612), or the highest interest possible if net earnings are lower, is to be credited semi-annually to all contributions, reserves and accounts in the retirement fund.  (§ 31510.5; now § 31615.)

4.  Thereafter, net earnings are to be credited to the Contingency Reserve Account in an amount to insure that such account remains at no less than 1 percent and no more than 3 percent of the retirement system assets.  This reserve is not available for the payment of benefits, but is a reserve against deficiencies in interest earnings, losses on investments and certain other contingencies.  (§ 31510.6; now § 31616.)

5.  Thereafter, any remaining net earnings shall be used to pay cost-of-living contributions under article 16.5 in counties which had, prior to January 1, 1983, an employer-employee agreement that a fixed part of such contributions should come from interest earnings (the "advance reserves").  (§ 31510.7; now § 31617.)

6.  Thereafter, pursuant to section 31618, 50 percent of the remaining net earnings are to be credited to a new Supplemental Retiree Benefits Reserve.  This provision is the focus of this opinion request.  Section 31510.8, now section 31618, provides (with numbering changes):

"The board shall establish a Supplemental Retiree Benefit Reserve in the retirement system consisting of any amount previously in the reserve against deficiencies, which on the date of adoption of this article, exceeds 3 percent of the assets of the retirement fund, or any lesser amount, as determined by the board.  In no event, however, shall the balance of the Contingency Reserve Account be reduced below 1 percent of system assets

8

86-707

for this purpose.  *The Supplemental Retiree Benefit Reserve shall be used only for the benefit of retired members and beneficiaries.*

"Commencing on the date of adoption of this article, there shall be a semiannual transfer into this reserve of 50 percent of the balance of net earnings, as defined in Section 31613, after crediting all accounts pursuant to Section 31615, rebuilding the Contingency Reserve Account pursuant to Section 31616 and paying the part of the cost-of-living contributions pursuant to Section 31617, if applicable.

"*The distribution of the Supplemental Retiree Benefits Reserve shall be determined by the board.*"

(Emphasis added.)  "Board" as used in this section means board of retirement.  (See § 31459.)

7.  And finally, the remaining 50% of the net interest income is to be credited to the accounts in the retirement system in the same manner as in "3" *supra*, that is to all contributions, reserves and accounts.  However, no further credit is to be made to the Contingency Reserve Account or the Supplemental Retiree Benefits Reserve.

In addition to adding the provisions of article 5.5 to the 1937 Act, chapter 886, Statutes of 1983, also amended sections 31681.8, 31691, 31691.1, 31789.1, 31789.2, 31874 and 31874.3, the provisions relating to supplemental benefits which were discussed at length above.  These sections were amended to provide that in counties which adopt article 5.5, that in lieu of utilizing the "advance reserves" to pay benefits where permitted or required, the new Supplemental Retiree Benefits Reserve should be used instead.  For example, section 31681.8, relating to nonvested supplemental cost-of-living adjustments, was amended to add the following:

"Upon adoption by any county providing benefits pursuant to this section, of Article 5.5 (commencing with Section 31510) of this chapter, the board of retirement shall, instead, pay those benefits from the Supplemental Retiree Benefits Reserve established pursuant to section 31510.8."

And, for example, section 31874, found in article 16.5, relating to vested cost-of-living adjustments was amended to add:

"Except in a county of the first class, upon adoption by a county providing increases in allowances pursuant to this article, of Article 5.5

9

(commencing with section 31510) of this chapter, only that portion of the increases in allowances which is paid from surplus earnings described in Section 31592.2 shall be paid, instead, from the Supplemental Retiree Benefits Reserve established pursuant to section 31510.8."

In summary as to both article 5 counties and the new article 5.5 counties, it is seen that:

1. The financial provisions of article 5 do not require the board of retirement to allocate any specific amount of interest income of the retirement funds to the employer, employee or reserve accounts other than that necessary to maintain the reserve for deficiencies at a 1 percent of assets level. Thus, large quantities of interest may be credited to the "advance reserves" account. That account is available for the payment of "benefits described in" the 1937 Act. Where interest in excess of the actuarial assumption rate is allocated to and utilized for the payment of those benefits, an increase in the contribution rates of employer and employees would be the natural result.

Although the law specifically permits or specifically requires some supplemental benefits to be financed from the advance reserves, the law is silent as to the source of funding for the type of supplemental benefits at issue herein. Funding must be provided from some source, however, whether from contributions or the advance reserves.

2. In contrast to article 5, under which the bulk of interest income may possibly be treated as "excess income" and made available for the immediate payment of new benefits, the "alternative financial provisions" of article 5.5 have as a declared legislative purpose to provide for the orderly and *equitable* distribution of earnings from the retirement system. Accordingly, article 5.5 requires that interest at the *full* actuarial rate be first credited to the retirement system accounts (contributions, reserve and other accounts) before there may be any further distribution of income. Thereafter interest is distributed sequentially to (1) a Contingency Reserve Account which is to be at least 1 percent and no more than 3% of the system's assets; (2) then to fund cost-of-living increases which by contract were required to be financed from excess interest; (3) then 50 percent of the remaining interest to the Supplemental Retiree Benefits Reserve for the benefit of retired members and; (4) then the remaining 50% to contribution and other remaining accounts of the retirement system.

Additionally, article 5.5 in furtherance of its intent to recognize the fiduciary role of the bond of retirement, inserts into the law a "prudent man" rule with respect to the board's fiscal recommendations to the board of supervisors.

10

86-707

## C.     RESOLUTION OF THE QUESTION

Having outlined the basic financial provisions under which article 5 and article 5.5 counties operate, we now reach the issue presented.  This is whether the increased benefits for retirees provided for in section 31681.52 may be funded in an article 5.5 county, such as Alameda County, from the Supplemental Retiree Benefits Reserve established pursuant to former section 31510.8, now section 31618.  Section 31681.52 provides in full:

"Every retirement allowance or optional death allowance, including an allowance payable to a survivor of a member, payable to or on account of any member of this system or of a superseded system who has been or was retired for service is hereby increased as follows:

| Period during which retirement became effective | Percentage of increase in monthly retirement allowance |
| --- | --- |
| On or prior to June 30, 1967 . . . . . . . . . . . . . . | 10% |
| 12 months ended June 30, 1968 . . . . . . . . . . . | 8% |
| 12 months ended June 30, 1969 . . . . . . . . . . . | 6% |
| 12 months ended June 30, 1970 . . . . . . . . . . . | 4% |
| 12 months ended June 30, 1971 . . . . . . . . . . . | 2% |

"In no event shall any allowance be increased by an amount greater than seventy-five dollars ($75) a month.  A member with credit for 10 or more years of service in the system shall receive not less than twenty-five dollars ($25) a month.

"This section shall not be operative in any county until such time as the board of supervisors shall, by ordinance adopted by a majority vote, make the provisions of this section applicable in such county."

As noted, this provision is one of a number of similar provisions in the 1937 Act which provide for a permanent increase in retirement allowances for prior retirees *and as to which the act is silent as to a funding source*.

Returning to section 31618, the provision which establishes the Supplemental Retiree Benefits Reserve, we see that the section provides, inter alia, that:

11

1.  "The Supplemental Retiree Benefit Reserve shall be used only for the benefit of retired members and beneficiaries."

2.  "The distribution of the Supplemental Retiree Benefits Reserve shall be determined by the Board [of retirement]."

Accordingly, the clear and unambiguous language of section 31618 would appear to permit the board of retirement, in its discretion, to utilize the Supplemental Retiree Benefits Reserve for the section 31681.52 benefits. There is nothing in the language of section 31618 which would indicate a legislative intent to exclude such benefits from its scope:

> "In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law;"' (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' (*Rich v. State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512]; *Moyer v. Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d, at p. 230.) Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. (*People v. Knowles* (1950) 25 Cal.2d 175, 182 [217 P.2d 1]; *Tracy v. Municipal Court* (1978) 22 Cal.3d 760, 754 [150 Cal.Rptr. 785, 587 P.2d 227].) 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' (*People v. Knowles, supra*, 35 Cal.2d, at p. 183; *Rich v. State Board of Optometry, supra*, 235 Cal.App.2d, at p. 604.)" (*California Teachers Assn. v. San Diego Community College District* (1981) 28 Cal.3d 692, 698.)

Several arguments, however, have been suggested as reasons for deviating from the plain wording of section 31618. The first arises from a letter from Senator Newton R. Russell, dated October 19, 1982 to "Interested parties who participated in systems created under the County Employees' Retirement Act of 1937." We are advised that this letter was a prelude to the introduction of the bill by Senator Russell which eventually became article 5.5. In that letter he stated, inter alia:

> ". . . My goal has been, and still is, to allow affected counties to continue to provide the benefits they are now funding from 'reserves' to

12

current retirees, but not to expand those benefits from this funding source. It is my hope that the method of funding benefits to retirees will be eventually scaled down and ultimately eliminated by a more actuarially traditional source . . . ."

*Assuming* that to fund the section 31681.52 benefits from the Supplemental Retiree Benefits Reserve *would* constitute such an expansion of the use of reserves, Senator Russell's letter still is not relevant to determining the intent of the Legislature as a whole. As stated in *California Teachers' Assn. v.* San Diego Community College Dist., *supra*, 28 Cal.3d at pages 699-700; quoting from *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590:

"The district contends that the use of Senator Rodda's statement would violate well-settled principles of statutory construction. We agree. 'In construing a statute we do not consider the motives or understanding of individual legislators who cast their votes in favor of it [Citations.] *Nor do we carve an exception to this principle because the legislator whose motives are proffered actually authored the bill in controversy* [Citation]; no guarantee can issue that those who supported his proposal shared his views of its compass.' . . ." (Emphasis added; See also *Flood v. Wyeth Laboratories, Inc.* (1986) 183 Cal.App.3d 1272, 1280.)

It is, however, urged that this same "philosophy" as set forth in Senator Russell's letter is found in the declaration of legislative intent set forth in section 1 of chapter 886, Statutes of 1983, which enacted, article 5.5, where the Legislature declared in part:

"It is also the intent of the Legislature to not disrupt the supplemental benefits currently being provided to county retirees with funds from various retirement system reserves. . . ."

This legislative purpose is, of course, manifest *and carried out* in the amendments to sections 31681.8, 31691, 31691.1, 31789.1, 31789.2, 31874 and 31874.3, discussed above. Thus, where these statutes permitted or required certain benefits to be funded from the advance reserves in article 5 counties, the Legislature amended the law to provide that they should thereafter be funded from the Supplemental Retiree Benefits Reserve in counties which adopted article 5.5.

It is urged, however, that the benefits provided by these sections set the parameters for and accordingly *limit* the benefits which may be financed from the new

reserves provided in section 31618 for retirees; that accordingly section 31618 reserve funds are *not* available for the 31816.52 benefits at issue herein.

However, since the declared legislative intent has been adequately carried out through express amendments to the law, we do not believe we should *infer* an additional, *un*expressed intent. In short, we do not believe that a possible "philosophy" to be gleaned from one statement in the declaration of legislative intent set forth above may be used to nullify the plain meaning of section 31618. We believe it would be a "quantum leap" to state that the amendment to the seven specific provisions in 1983 constituted a limitation on an eighth provision, that is, section 31618. Had the Legislature intended such a limitation, it could have said so.

Had existing law in 1983 limited the use of the advance reserves to the seven specific provisions amended in 1983, the "limitation argument" would have much greater force. However, there is no statutory law, case law or opinions of this office which provides such a limitation. Nor have we been supplied with or discovered any evidence that the Legislature understood that such a limitation existed when it enacted article 5.5. Nor does the language of the section which establishes the advance reserves indicate such a limitation when it states that the advance reserves are "for the sole purpose of payment of cost of the benefits described in" the 1937 Act. (§ 31592.2.) Nor do we have any evidence that the advance reserves was not used in some counties to fund benefits such as provided for in section 31618.52. Although Alameda County may not have done so, other 1937 Act counties may have.[5]

---

[5] Accordingly, since we do not know what other counties may have been doing in this regard, it is also difficult to adopt or agree with the argument that to fund section 31681.52 benefits would constitute an expansion of benefits paid from reserves (See argument re Senator Russell's letter, discussed *ante*.)

Furthermore, we have also examined the staff reports prepared for the various legislative committees as the bill which became article 5.5 proceeded through the Legislature in 1983. We found nothing therein which demonstrated an understanding by the Legislature that the advance reserves were limited to certain enumerated specific benefits.

Significantly, the section 31681.52 benefits are really cost-of-living adjustments, but not so denominated. In both article 5 counties and article 5.5 counties it would appear that counties which have not already adopted the cost-of-living adjustment provisions may *still do so*. These may be financed from the advance reserves *or* the Supplemental Retiree Benefits Reserve *even where such benefits are vested*.

14

86-707

We, therefore, do not adopt this "limitation argument." In rejecting this argument we note that although section 31618 provides that the Supplemental Retiree Benefits Reserve "shall be used only for the benefit of retired members and beneficiaries" the statement of legislative intent does not restrict that benefit to *future* retirees. Section 1 of the statute states that these benefits are "to be disbursed at the discretion of the affected county board of retirement for the purpose of providing benefits *to present* and future retirees and beneficiaries." (Emphasis added.) To grant prior ("present") retirees benefits such as provided for in section 31816.52 certainly would be in furtherance of such legislative purpose.

In addition to the "limitation argument" rejected herein, it is urged that the Legislature could not have intended that section 31861.52 benefits could be funded from the Supplemental Retiree Benefits Reserve since such would also run counter to the legislative purpose in 1983 of improving the actuarial soundness of the 1937 Act retirement systems. This argument is that benefits such as section 31681.52 benefits, once granted, are permanent in nature. Accordingly, they should not be funded from an account such as the Supplemental Retiree Benefits Reserve, which is subject to the vagaries of the market place. In responding to this suggested argument, we reiterate below the statement of legislative purpose found in paragraph 2 of section 1 of the statute:

> "In enacting this act, the Legislature provides for the augmented crediting of interest earnings to various employee, employer and retired member accounts in the retirement fund in an effort to assure that the accounts are in actuarially sound condition in relation to their current liabilities and existing statutory requirements regarding the funding of present unfunded actuarial obligations."

Again, it is seen that the argued for legislative purpose is adequately carried out through the express provisions of article 5.5, which provide for sequentially "the augmented crediting of interest to various employee, employer and retired member accounts." There is nothing in the statement of legislative purpose which states that only certain types of benefits may be paid to present retirees from the augmented account for retirees. It is to be emphasized that benefits such as section 31681.52 benefits are provided for by law and must be funded in some manner. As to current employees, the statutory scheme appears to contemplate that their contributions be used only for retirement benefits for the contributing employees. (See § 31620 et seq.) Accordingly, under such statutory scheme the only remaining choices for funding benefits such as the section 31681.52 benefits would be either from *employer* contributions or from reserves generated from interest income.

15

In our view, to fund these benefits from reserves with the concomitant decrease in employer contributions requirements is proper. This is evident from article XVI, section 17 of the California Constitution which provides that the investment of retirement funds *to aid in reducing employer contributions* is a legitimate fiduciary purpose. Thus article 16, section 17 provides in part:

"Notwithstanding provisions to the contrary in this section and Section 6 of Article XVI, the Legislature may authorize the investment of moneys of any public pension or retirement system, subject to all of the following:

"(a) The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.

"(b) The fiduciary of the public pension or retirement system shall discharge his or her duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, *minimizing employer contributions thereto*, and defraying reasonable expenses of administering the system. . . ." (Emphasis added.)

Insofar as it may be urged that to fund permanent benefits from the Supplemental Retiree Benefits Reserve is actuarially unsound, we offer in response that section 31611 requires a reevaluation of the actuarial soundness of the retirement system *at least* every three years. If the use of the Supplemental Retiree Benefits Reserve proves inadequate to fund section 31681.52 benefits, the board of retirement can recommend to the board of supervisors that the employer's contribution be increased to fund them. (Cf. § 31681.8.) Again, however, we do not believe we can infer a limitation on the use of these reserves based upon the broad statement of legislative intent quoted above regarding the intent to augment reserve accounts, which intent is adequately carried out in the express provisions of law.

Finally, it is urged that to fund section 31681.52 benefits from the Supplemental Retiree Benefits Reserve would be unfair to other current retirees who do not receive such benefits. However, we are cited to no law, nor are we aware of any law, which requires such reserve funds to be distributed on a "per capita" basis. The law in section 31618 merely provides that the Supplemental Retiree Benefits Reserve shall be used for the benefit of present and future retirees. By a parity of reasoning, it would also

16

seem unfair to provide any benefits even to all present retirees, since that would reduce the reserves for *future* retirees who should also have their "per capita" share of the fund.

        In summary, we conclude that the literal wording of section 31618 permits the increased benefits for retirees provided for in section 31681.52 to be funded from the Supplemental Retiree Benefits Reserve. We believe that it would be pure speculation to conclude that the Legislature intended to prohibit the use of that reserve for such benefits, leaving them to be funded solely from employer contributions.

*****